(No. 61910.

SAMUEL BENJAMIN, Appellant, v. CABLEVISION PROGRAMMING INVESTMENTS *et al.*, Appellees.

*Opinion filed September 17, 1986.—Rehearing denied December 1, 1986.*

152

CLARK, C.J., and SIMON, J., took no part.

Harvey J. Barnett, Ira J. Bornstein, Michael S. Blazer and Martin D. Tasch, of Chicago (Harvey J. Barnett & Associates, Ltd., of counsel), for appellant.

Freidman & Koven, of Chicago (Michael D. Sher, Rowe W. Snider and Jonathan S. Spaeth, of counsel), for appellees.

McCracken & Walsh, of Chicago (Thomas J. McCracken, Jr., and Thomas G. Moffitt, of counsel), for *amicus curiae* Richard P. Donnellan.

Mayer, Brown & Platt, of Chicago (Kenneth J. Jurek, Barbara Bertok and Carrie Huff, of counsel), for *amicus curiae* ENI Exploration Program 1981—II *et al.*.

JUSTICE RYAN delivered the opinion of the court:

The plaintiff, Samuel Benjamin, M.D., brought this action under the Illinois Securities Law of 1953, as amended (the Illinois Securities Act or the Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 137.1 *et seq.*) to void the sale of one limited partnership unit in Cablevision Programming Investments (Cablevision) and to recover the purchase price, plus interest and attorney fees. In a two-count complaint filed in the circuit court of Cook County, the plaintiff alleged that the limited-partnership interest in Cablevision was a security within the meaning of the Illinois Securities Act (Ill. Rev. Stat. 1979, ch. 121½, par. 137.2—1) and that Cablevision and its general partners, Communications Management Corporation, Cable Equity, Inc., and Charles F. Dolan, sold the security to him in violation of the Act either by failing to register the security with the Secretary of State prior to the sale

thereof in this State (Ill. Rev. Stat. 1979, ch. 121½, par. 137.5) (count I) or, in the alternative, by failing to file a report with the Secretary of State after the sale was consummated (Ill. Rev. Stat. 1979, ch. 121½, par. 137.4(G)) (count II). The circuit court dismissed the complaint for failure to state a cause of action. The appellate court affirmed the circuit court (132 Ill. App. 3d 943), and we allowed the plaintiff's petition for leave to appeal (94 Ill. 2d R. 315). Richard P. Donnellan and the ENI Exploration Program 1981—II *et al.* were granted leave to file *amicus curiae* briefs in support of the plaintiff and the defendants respectively.

Cablevision, established as a limited partnership under the laws of the State of Illinois, with its principal place of business in Chicago, invests in and/or loans monies to companies engaged in the business of acquiring, owning, producing and distributing television programming to cable-television systems. In August of 1980, the plaintiff, a resident of Torrence, California, purchased one limited-partnership unit in Cablevision for $200,000. The relevant facts surrounding this transaction are not in dispute. The plaintiff was never physically present in Illinois in connection with this sale. The plaintiff was solicited in California for the purchase of a limited-partnership interest. The plaintiff received, in California, an investment letter, a selling circular, and a subscription agreement. These documents were sent by the defendants from Chicago. The plaintiff signed the subscription agreement in California and returned it to Cablevision's Chicago office with a check for $40,000. Upon receipt of the check and the subscription agreement, Charles F. Dolan, and Linda Kreer Witt, president of Communications Management Corporation, executed the agreement on behalf of Cablevision. Confirmation of the sale and evidence of ownership of his interest in Cablevision were prepared by the defendants in Chicago and mailed to the plaintiff in California.

In September of 1982, the Securities Division of the Illinois Secretary of State's Office, in response to the plaintiff's inquiry, advised the plaintiff that a registration statement had not been filed in connection with the sale of limited-partnership interests in Cablevision and that the defendants had failed to file the prescribed "report of sale" necessary to preserve a limited-offering exemption. In December of 1982, the plaintiff sent the defendants a notice of election to rescind the sale of his limited-partnership unit. The notice, which was sent within six months after the plaintiff acquired knowledge that the sale was voidable, stated that the plaintiff's right to rescind was premised either on the defendants' failure to duly register the security with the Secretary of State as required by section 5 of the Illinois Securities Act or their failure to properly qualify for any exemption therefrom, specifically the limited-offering exemption under section 4(G). The plaintiff thereafter tendered his interest in Cablevision and demanded the return of the purchase price, plus interest and attorney fees. The defendants, however, refused to rescind the sale.

On March 2, 1983, the plaintiff filed a two-count complaint in the circuit court of Cook County seeking to void the sale of his interest in Cablevision and to recover the purchase price, together with interest and attorney fees. Count I alleged that the defendants violated section 5 of the Illinois Securities Act by selling limited-partnership interests to more than 35 persons in Illinois without filing a formal registration statement with the Secretary of State. As an alternative grounds for rescission, count II alleged that if the defendants sold limited-partnership units to less than 35 persons in Illinois, then the defendants failed to properly qualify the sale to the plaintiff under the limited-offering exemption of section 4(G) due to their neglect to file the requisite post-sale report. The complaint contained no allegations of fraud, material

misrepresentation, material omission, or other deceptive practices in connection with the plaintiff's purchase.

Pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619), the defendants moved to dismiss the complaint for failure to state a cause of action. The defendants alleged that neither count of the plaintiff's complaint contained sufficient allegations of fact establishing that the sale of the limited-partnership unit to the plaintiff was a *"sale in this State"* (count I) or a sale made to *"a person in this State"* (count II). The circuit court agreed and granted the motion to dismiss for failure to state a cause of action for rescission.

Section 5 of the Illinois Securities Act (Ill. Rev. Stat. 1979, ch. 121½, par. 137.5) requires, in pertinent part, that all securities except those exempt under section 3 or those sold in transactions exempt under section 4 shall be registered with the Secretary of State *prior to sale in this State.* Section 4(G), which is the method for exempting a limited offering securities transaction from registration, provided at the time of the transaction in question that the registration provisions of section 5 shall not apply to a sale of securities if, within the 12-month period preceding the last sale in reliance on this exemption, (1) sales are made to not more than *35 persons in this State* or the aggregate selling price of the securities does not exceed $50,000 and (2) the aggregate number of *offerees in this State* does not exceed 70 in that 12-month period, *provided further* that (c) *the issuer files with the Secretary of State a report of sale within 30 days after the sale,* setting forth the name and address of the issuer, the total amount and the price of the securities sold, the commission paid, and the name and address of the purchaser. (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 121½, par. 137.4(G).) Section 12 of that act states that it is a *violation* of Illinois law to

"sell any security except in accordance with the provisions of this Act" or to "fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act." (Ill. Rev. Stat. 1979, ch. 121½, pars. 137.12(A), (D).) Under section 13 of the Act, a purchaser may rescind a sale of securities made in violation of the provisions of the Illinois Securities Act within three years from the date of the sale. Ill. Rev. Stat. 1979, ch. 121½, par. 137.13.

This case involves the construction and interpretation of two provisions of the Illinois Securities Act. Interpretation and construction of statutory provisions are governed by the fundamental principle that the intention of the legislature should be ascertained and given effect. (*Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, 192; *City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46.) In determining legislative intent, consideration must be given to the entire statute, its nature, object, and purpose to be attained, and the evil to be remedied. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41; *Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 517.) However, if the intent of the legislature can be ascertained from the language of the statute itself, then that intent will prevail without resort to extrinsic aids for construction. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277; *Louis A. Weiss Memorial Hospital v. Kroncke* (1957), 12 Ill. 2d 98, 105.

Count I of the complaint alleged that the defendants violated section 5 of the Illinois Securities Act by failing to register with the Secretary of State the limited-partnership unit prior to the sale to the plaintiff. Unless the securities fall within the exemptions of sections 3 or 4, section 5 mandates the registration of securities "prior to sale in this State." (Ill. Rev. Stat. 1979, ch. 121½, par. 137.5.) Accordingly, if the sale of a security occurs

outside of Illinois, then the registration requirements of section 5 are not applicable. A purchaser seeking rescission based upon the seller's violation of the registration provisions of section 5 must therefore allege ultimate facts establishing that the complained-of sale was a "sale in this State." See *McBreen v. Iceco, Inc.* (1956), 12 Ill. App. 2d 372, 379.

In affirming the circuit court's dismissal of the plaintiff's complaint, the appellate court in this case held that count I failed to sufficiently allege a "sale in this State." Relying on *Green v. Weis, Voisin, Cannon, Inc.* (7th Cir. 1973), 479 F.2d 462, the appellate court concluded that because the Illinois Securities Act is primarily intended to protect Illinois residents and those within Illinois' borders, the purchaser's location and actions in connection with the sale, not the seller's, determines whether a sale of a security is "a sale in this State."

Section 2 of the Illinois Securities Act in effect at the time of the transaction in question provided:

> "Definitions. As used in this Act, the terms defined in Sections 2.1 through 2.18 shall have the meanings therein ascribed." (Ill. Rev. Stat. 1979, ch. 121½, par. 137.2.)

Section 2.5 had the following definition of "sale" or "sell":

> " 'Sale' or 'sell' shall have the full meaning of that term as applied by or accepted in courts of law or equity, and shall include every disposition, or attempt to dispose, of a security for value. 'Sale' or 'sell' shall also include a contract to sell, an exchange, an attempt or an offer to sell, an option of sale or a solicitation of an offer to buy, directly or indirectly; ***." (Ill. Rev. Stat. 1979, ch. 121½, par. 137.2–5.)

Thus, it is clear from the statutory definition that the term "sale," as used in the Act, encompasses not only transactions that fall within the common legal understanding of that term, but also is much broader and includes other activities which in law are recognized only

as preliminary steps in the consummation of a sale, such as an offer or a solicitation of an offer.

It is the plaintiff's position that the complaint sufficiently alleged that the sale of the limited-partnership unit was a sale of a security in Illinois. Relying on the facts that the solicitation and offer to sell emanated from Illinois, that the subscription agreement and check were returned to Illinois, and that the subscription agreement was accepted by the defendants in Illinois, the plaintiff argues that the Illinois Securities Act's broad definition of "sale" places the consummation of the sale in Illinois. The plaintiff also maintains that common law principles support his position and asserts that the law which governs the sale of securities is the law of the State where the contract of sale was made, *i.e.*, the place where the last event necessary to make a binding contract occurred. The plaintiff asserts that this event occurred in Illinois.

The gist of the defendants' argument is that the Illinois Securities Act is not applicable to this particular securities transaction because the sale of the limited-partnership unit was a sale of a security in California. In support of their contention that this sale did not occur in Illinois, the defendants rely on the record and the exhibits attached to the plaintiff's complaint, which establish that plaintiff was a California resident, that plaintiff was solicited in California, that plaintiff executed the subscription agreement in California, and that plaintiff received confirmation of the sale in California. The defendants further contend that the statutory definition of "sale" is inherently unsuitable for determining whether a sale of a security is a "sale in this State" and that application of the statutory definition would be inconsistent with the purpose of the Illinois Securities Act to protect Illinois citizens and purchasers within Illinois' borders.

Both parties rely on *Green v. Weis, Voisin, Cannon, Inc.* (7th Cir. 1973), 479 F.2d 462, to support their positions. In *Green*, the plaintiffs were residents of Chicago. All except one of the plaintiffs were solicited in Illinois for the sale of common stock of London Ben, Inc., by Weis, Voisin, Cannon, Inc., the underwriter and agent for the sale of London Ben stock. Each of the plaintiffs accepted the offer to sell by signing an investment letter and sending it with a payment to the Weis, Voisin offices in Chicago. After the plaintiffs' checks and investment letters were received in Chicago, the checks were forwarded by Weis, Voisin to its New York offices and deposited in its New York bank account, from which State the confirmations and stock certificates had also issued. The plaintiffs thereafter attempted to rescind these sales on the grounds that the securities were neither registered nor exempt from registration since the defendants failed to file a section 4(G) report. In reversing the district court, the seventh circuit held that the defendants' solicitations of Illinois residents in Illinois resulted in a sale of securities in Illinois. Reasoning that the scope of the term "sale" as defined in section 2.5 is not limited to general contract principles or to the Uniform Commercial Code, the court concluded that the defendants' solicitation of Illinois residents and other contacts with this State pursuant to such solicitations were sufficient to bring the various transactions within the statutory definition of "sale" and thus the purview of the Illinois Securities Act. Because the statutory definition of "sale" controlled, the court pointed out that "[w]hether or not a common law definition of sale would therefore place the consummation of the sale in New York is therefore irrelevant." 479 F.2d 462, 465.

We believe the appellate court misconstrued the import and scope of the *Green* decision. *Green* does not stand for the narrow principle that because the Illinois

Securities Act is primarily intended to protect Illinois residents and those within Illinois' boundaries, the purchaser's location and actions in connection with the sale, not the seller's, determines whether a sale of a security is a "sale in this State." In *Green*, the court was concerned that the Illinois Securities Act and its protections for Illinois residents would be thwarted if solicitations could be made in Illinois to Illinois residents while the consummation of the transaction occurred in another State. The court thus reasoned that the term "sale," as defined in section 2.5 of the Act, must be strictly applied to achieve the broad paternalistic purpose of the Act.

Two Federal district courts have followed the rationale of *Green* in locating the situs of a sale of a security for purposes of the Wisconsin and Iowa securities acts. (See *Hardtke v. Love Tree Corp.* (E.D. Wis. 1975), 386 F. Supp. 1085; *Getter v. R. G. Dickinson & Co.* (S.D. Iowa 1973), 366 F. Supp. 559.) In *Green, Hardtke,* and *Getter,* the location of the sale was determined in light of the paternalistic policy of the Illinois, Iowa, and Wisconsin securities acts. In *Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, the court, quoting from *Foreman v. Holsman* (1957), 10 Ill. 2d 551,. 553, and *Meihsner v. Runyon* (1960), 23 Ill. App. 2d 446, 456, acknowledged the paternalistic character of our securities act, the purpose of which, the court stated, is to protect the public as a whole from the unacceptable acts of persons engaging in the business of disposing of securities. (*Silverman v. Chicago Ramada Inn, Inc.* (1965), 63 Ill. App. 2d 96, 99-100.) The court in *Silverman* noted that in order to accomplish the intent of the Act, it should be liberally construed. The court, in discussing the scope of the statutory definition of sale, concluded:

"This definition of a sale is in itself liberal. Its obvious purpose is to exclude nothing that could possibly be regarded as a sale. Under this broad and unambiguous defi-

nition every step toward the completion of a sale would be a sale. The words 'shall include every disposition *** of a security for value' are themselves all-encompassing." 63 Ill. App. 2d 96, 101.

The defendants argue that blue sky laws are fundamentally intrastate in character and that the provisions of our securities act should not be given extraterritorial effect. Therefore, the defendants contend that the paternalistic nature of our act must be limited to the protection of those who have made purchases of securities *in this State*. They argue, as the appellate court held, that it is the purchaser's location and actions that determine if a sale has been made "in this State." The defendants also urge that the definitions contained in section 2 of the Act should not be mechanically applied to all situations but should be selectively applied in furtherance of the purpose of the Act. Following this argument, they contend that the purpose of our act is to protect Illinois residents and others who purchase securities in this State.

We view the paternalistic character of our act to be broader. Just as this State has an interest in protecting those within its borders from unscrupulous conduct, it also must be concerned with and seek to prevent those within its borders from engaging in such conduct. We noted above that the court in *Silverman* quoted from *Foreman,* in which this court stated:

> "The Illinois Securities Act of 1919 was enacted for the protection and benefit of the public as a whole—'to protect the public from the dishonesty, incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer loss.' (*Stewart v. Brady*, 300 Ill. 425, 442. See also *People ex rel. Emmerson v. Lee*, 311 Ill. 552, 558; *People v. Glassberg*, 326 Ill. 379, 390.)" (*Foreman v. Holsman* (1957), 10 Ill. 2d 551, 553.)

The liberal application of the statutory definition of the

term "sale" will fulfill this purpose of the Act and will prevent this State from being a haven for unscrupulous dealers in securities.

On the basis of the above record, we find that the factual allegations of count I sufficiently allege a sale of a security "in this State." Under section 2.5, the term "sale" includes within its scope the full meaning of sale as applied by or accepted in courts of law or equity, a solicitation of an offer to purchase, a subscription or an offer to sell, and any act by which a sale is made. The activities of the defendants in preparing and mailing the investment letter, the offering circular, and the subscription agreement may be found to be an "offer to sell" or "a solicitation of an offer to buy" a limited-partnership interest in Cablevision as those terms are used in the Act. The conduct of the plaintiff in signing the subscription agreement, and placing it in the mail with a check addressed to the defendants in Chicago, may be found to be an "offer to buy." The defendants, in executing the subscription agreement and cashing the check, may be found to have accepted the plaintiff's offer to purchase, thus consummating the transaction in this State. Because the defendants' activities which fall within the statutory definition of "sale" took place within this State, the factual allegations of count I sufficiently allege a sale of a security "in this State." The fact that a portion of the transaction took place in California is not sufficient to place this transaction outside the provisions of the Illinois Securities Act.

The defendants contend, however, that the statutory definition of "sale" determines only *what* constitutes a sale, not *where* such a sale occurs for purposes of the section 5 registration requirements. We fail to see the logic in this distinction. Section 5 expressly provides for the registration of securities prior to *sale* in Illinois. The term "sale" has been defined by the legislature. It is

well established that "[t]he legislature has the power to make any reasonable definition of the terms in a statute, and such definitions, for the purpose of the Act, will be sustained." (*Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66.) We noted above that the legislative intent in enacting the regulatory provisions of the Illinois Securities Act was to protect the investing public and to prevent the use of Illinois as a base for fraudulent operations or for the sale of questionable or doubtful securities to residents of this or other States. The language of sections 2.5 and 5 of the Act is certain and unambiguous. Therefore, this court's legitimate function is to apply the law as enacted by the legislature. *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133; *Department of Public Works & Buildings v. Schon* (1969), 42 Ill. 2d 537, 539.

The defendants also contend that a literal application of the term "sale" to the Act's registration provisions would result in a single sale occurring simultaneously in a number of States, each State having some insignificant and fleeting connection with the transaction. The defendants assert that a securities transaction with extremely tenuous connections with Illinois might therefore constitute a "sale in this State" or raise substantial doubts on that issue, leaving sellers uncertain whether the Illinois registration requirements apply to such transaction. We note that it is quite possible that the securities laws of two or more States may apply to a single transaction. In order for the Illinois Securities Act to apply, however, the transaction must have some physical nexus with Illinois. There must be either a "disposition or an attempt to dispose, of a security for value," a "contract to sell" a security, an "offer" to sell a security, or a "solicitation of an offer" to buy a security (Ill. Rev. Stat. 1979, ch. 121½, par. 137.2—5). Furthermore, these activities must take place within Illinois. Contrary to the defendants' as-

sertion, a securities transaction with extremely insignificant, fleeting, or tenuous connections with Illinois will not constitute a "sale in this State." Because the term "sale" is broadly and unambiguously defined, the literal application of the expansive statutory definition will eliminate uncertainty regarding whether Illinois registration and reporting requirements apply to interstate securities transactions.

For the reasons stated above, we hold that the circuit court erred in granting the defendants' motion to dismiss count I of the complaint.

We now turn to count II of the plaintiff's complaint. Count II alleged, in the alternative, that the defendants violated section 4(G) of the Act, the limited-offering exemption, by improperly failing to comply with its sales-information reporting requirements. As discussed above, by virtue of section 4(G), a security offering is exempt from registration under section 5 if the offers and sales to *persons in this State* are below the statutory number and if the sale is reported to the Secretary of State. Ill. Rev. Stat. 1979, ch. 121½, par. 137.4(G).

The defendants contend that the sale of this limited partnership interest was not a violation of the Illinois Securities Act since they were under no duty to file a report of information regarding that sale with the Secretary of State. The defendants maintain that the limited-offering exemption of section 4(G) is not applicable to the facts of this case because the plaintiff was not a "person in this State" at the time he purchased the limited-partnership unit. The defendants assert that the plain and ordinary construction of the term "persons in this State" means Illinois residents and nonresidents who are physically present in Illinois. In support of their assertion, the defendants have provided this court with the legislative history of and amendments to section 4(G), the interpretive position of the Securities Division

of the office of the Secretary of State as reflected in the instructions to the Official Form 4G Report of Sale, and professional literature from the securities bar. The defendants further maintain that under the doctrine of last antecedent, which provides that modifying words or phrases are construed to modify the words of phrases immediately preceding them and not preceding words and phrases that are more remote, the phrase "in this State" modifies "persons," not "sales."

The plaintiff's principal contention is that the limited-offering exemption contained in section 4(G) is not restricted to purchasers who were either physically present in or residents of Illinois when the transaction at issue otherwise involves a sale in Illinois. The plaintiff argues that the phrase "in this State" modifies "sales," which is governed by the broad statutory definition of the term in section 2.5 discussed above. Thus, under the plaintiff's construction, the reporting requirement of section 4(G) would apply if the offers and sales "in this State to persons" are below the statutory number. The plaintiff suggests that this construction furthers the legislative purpose of regulating sales that emanate from and are consummated in Illinois.

Count I of the complaint, which we have just discussed, is based on the alleged failure of the defendants to register the security sold to the plaintiff as required by section 5 of the Act. Count II is pleaded in the alternative and alleges facts which, if proved, would establish a transaction exempt from the registration requirements of section 5. However, to perfect this exemption, it is required that a report of the issuance of the security be filed with the Secretary of State. The cause of action in count II is based on the alleged failure of the defendants to file such a report within the time specified in section 4(G). The exemption from the registration requirement of section 5, as set forth in section 4(G), is available if,

during the 12 months preceding the point in time immediately after the last such sale or sales made in reliance on this subsection, *sales* are made to not more than 35 *persons in this State* or the aggregate selling price of the securities does not exceed $50,000, provided that *offers to sell* such securities are made to not more than 70 *persons in this State* during the 12-month period preceding the last such sale. However, as noted above, to perfect this exemption a report of the sale must be filed with the Secretary of State within 30 days after the sale. Ill. Rev. Stat. 1979, ch. 121½, par. 137.4(G).

The "sale in this State" language discussed in our consideration of count I above cannot be equated with "sale to a person in this State," as used in section 4(G). The word "sale" in section 4(G) should not be given the same meaning as we have placed upon that word in section 5, for the controlling language in section 4(G) is "to a person in this State." This language alters the broad scope we have above placed on the word "sale." Thus, we cannot accept the plaintiff's contention that "in this State" refers to sales in this State and not to persons in this State. The plain literal reading of section 4(G) discloses that the section is speaking of persons in this State and not sales.

The defendants place reliance on the doctrine of last antecedent. This doctrine of statutory construction requires that modifying words or phrases be construed to modify words or phrases immediately preceding them rather than more remote words or phrases, unless the intent of the legislature disclosed by the context and reading of the entire statute requires otherwise. (*People v. Thomas* (1970), 45 Ill. 2d 68, 72.) We find nothing in this act which manifests a legislative intent that the words "in this State" modify the word "sale" and not the word "persons." The doctrine of last antecedent should be applied and the section should be construed to

refer to "sales to persons in this State" and not "sales in this State to persons."

The legislative history of the exemption provided in section 4(G) adds supports to the above conclusion. As originally enacted, section 4(G) granted the exemption in cases where sales of securities were made to not more than 15 persons. The question arose as to whether this provision included sales to persons outside of Illinois. (See Ill. Ann. Stat., ch. 121½, Appendix, S. Young, Interpretative Comments And Notes On Sections Of The Securities Law of 1953 As Amended, at 579, 598-99 (Smith-Hurd 1960).) In 1969 this section was amended expanding the number of persons to whom the sales may be made from 15 to 25, and adding after the word "persons" the phrase "in this State." (Ill. Rev. Stat. 1969, ch. 121½, par. 147.4(G).) Although the 1969 amendment removed the previous uncertainty as to whether sales to persons outside the State were to be included in the number specified by the Act, the amendment itself created a new ambiguity as to whether "persons in this State" referred only to residents of Illinois or whether it also included transients. In 1983 the section was again amended by changing the language from "persons in this State" to "residents of this State." (Ill. Rev. Stat. 1983, ch. 121½, par. 137.4(G).) This amendment removed the uncertainty of the "persons in this State" provision and made it clear that this section was not intended to have extraterritorial effect. (1 Securities Law secs. 8.1—8.7, at 8—3—18 (Ill. Inst. for Continuing Legal Educ., 1985); Ill. Ann. Stat., ch. 121½, par. 137.4(G), R. Fein & S. Sosin, Securities Law Of 1953, Interpretive Comments (1983 Amendments), at 42 (Smith-Hurd Supp. 1986).) Thus, it is clear from the language of section 4(G) and the legislative history that the phrase "in this State" refers to *persons* in this State and not *sales* in this State, as the plaintiff contends.

Section 5 requires registration of all securities except those exempt in section 3 and those sold in transactions exempt under section 4. Thus, section 4 is a transactional exemption and states that the provisions of section 5 "shall not apply to any of the following transactions ***." (Ill. Rev. Stat. 1979, ch. 121½, par. 137.4.) Section 4(G) then commences with the language "the sale or sales of securities," and then states the sales exempt under section 4(G). As noted, this section contains the further requirement that to perfect this exemption the report of the sale must be filed with the Secretary of State. It is the sale *to a person in this State* that triggers the duty to file the report with the Secretary of State. (R. Van Cleave, *The Illinois Securities Law 4G Report of Sale—How to Deal with It and Its Consequences*, 60 Chi. B. Rec. 96, 97 (1978).) Since the transaction in question was not a sale to a person in this State, there was no duty to file the report required by section 4(G). Count II, therefore, did not state a cause of action and was properly dismissed by the circuit court.

We need not here decide whether "persons in this State" in the 1979 statute includes only residents, as the 1983 amendment to section 4(G) now provides. This is the principal argument raised in the briefs filed by the *amici*.

For the above reasons, the judgments of the appellate and circuit courts are reversed as to count I, and that count is remanded to the circuit court of Cook County for further proceedings. The judgments of the appellate and circuit courts are affirmed as to count II.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*

CLARK, C.J., and SIMON, J., took no part in the consideration or decision of this case.