**Dr. John F. ANSBRO, Plaintiff,**

v.

**SOUTHEAST ENERGY GROUP, LTD., et al., Defendants.**

No. 82 C 4433.

United States District Court, N.D. Illinois, E.D.

April 6, 1987.

David P. List, Richard J. O'Brien, Sidley and Austin, Chicago, Ill., for plaintiff.

John M. Myers, Friedman & Koven, Chicago, Ill., for Southeast Energy Group, Ltd., Synergy Group (Southeast) Partnership, Capital B. Corp., Synergy Group (Southeast) Inc., Bernard Filler, Ira Bobbins, Howard Singer, Synergy (Southeast) Management Associates and I.B. Enterprises.

Bruce S. Sperling, Sperling, Slater, Spitz, Chicago, Ill., for Levenfeld, Eisenberg, Janger and Felsenthan.

Barry J. Freeman, Robert Goldberg, Gottlieb & Schwartz, Chicago, Ill., for John Spaeth.

James E. Beckley, and Richard S. Schultz, James E. Beckley & Associates, Chicago, Ill., for Oppenheimer & Co., Inc.

## ORDER

NORGLE, District Judge.

This case arises out of plaintiff, John F. Ansbro's, purchase of a limited partnership interest in defendant, Southeast Energy Group, Ltd., a limited partnership formed to develop and construct a fuel-grade alcohol facility in Georgia. Ansbro's complaint is in ten counts and alleges violations of federal securities laws, the securities laws of Illinois and Indiana, and the common law of those states. Ansbro's current motion for partial summary judgment is directed at counts VII and VIII of the amended complaint. For the following reasons, plaintiff's motion is denied.

Counts VII and VIII seek a rescission of the purchase of a limited partnership inter-est in Southeast Energy Group, Ltd. These state law claims are premised on the failure of the defendants to register the securities in violation of state law. *See* Ill.Rev.Stat. ch. 121½, § 137.13 (1985); Ind. Code § 23–2–1–19(a) & (b) (1982). Ansbro also seeks to hold all the defendants jointly and severally liable under both Acts.

## I. Background

The lineup of defendants in securities cases is typically confusing. This case is no exception. It is undisputed that Ansbro purchased securities through a broker, John Spaeth, from Southeast Energy Group, Ltd. The relationship of the other defendants is also undisputed although a central issue in this case, whether all the defendants engaged in conduct rendering them jointly liable, is vigorously disputed. Simply stated, Southeast Energy is an Illinois limited partnership. It sold Ansbro interests in the partnership. Southeast Energy was formed to develop and construct a processing plant which creates fuel from ethanol alcohol. Synergy Partnership is an Illinois limited partnership and is a general partner of Southeast Energy. Capital B Corporation is an Illinois corporation and is a general partner of Synergy. Synergy Group, Inc., in turn, is an Illinois corporation which is a general partner of Synergy Partnership. Synergy Management Associates is an Illinois limited partnership and is the manager of Southeast Energy. Bernard Filler is the president and only full-time officer of Capital. Filler is also an officer and director of Synergy, Inc. and the managing general partner of Synergy Management. Ira Bobbins is a general partner, officer, and chairman of the board of directors of Synergy Management. Finally, Howard Singer is a general partner of Synergy Management and an officer and director of Synergy, Inc. Each of these defendants is allegedly responsible for the securities violations because each either participated in the sale of the securities to Ansbro or exercised control or management in Southeast Energy.

The complaint also identifies a number of other defendants (collectively the "Levenfeld defendants"). One of the individual

defendants, Ira Bobbins, filed a suggestion of bankruptcy, and this action has been stayed against him. When Ansbro filed an amended complaint he added two additional defendants: John Spaeth, the broker who sold Ansbro his limited partnership interest, and Oppenheimer & Co., the securities firm which employed Spaeth. These additional defendants are also allegedly liable to Ansbro because they participated in the sale of securities to Ansbro.

Counts VII and VIII are straightforward. They allege Southeast Energy was required, under the laws of Illinois and Indiana, to register the securities sold in each state with the Secretary of State of both states. Additionally, Southeast Energy was required to report a notice of the sale of the securities shortly after the sale. *See generally* Ill.Rev.Stat. ch. 121½, §§ 137.5 to 137.9, 137.4 (1985); Ind.Code §§ 23-2-1-3 & 23-2-1-2. It is undisputed that Southeast Energy did not register the limited partnership interests, seek an exemption from registration, or file a notice of sale in either state. Ansbro states he did not learn of these statutory violations until March 29, 1983 (in Illinois) and April 4, 1983 (in Indiana) when the respective Secretaries of State of each state notified him by mail that the securities were unregistered. Ansbro alleges these violations alone entitle him to rescission of the agreement, a return of his money, with interest, and damages for the lost use of investment funds. *See* Ill.Rev.Stat. ch. 121½, §§ 137.-12 & 137.13 (1985); Ind.Code § 23-2-1-19(a) & (b). Ansbro has moved for summary judgment on these two counts.

Southeast Energy raises several arguments in opposition to the motion. Initially, it argues that Illinois law does not apply to this transaction because Illinois' Blue Sky laws only protect residents of Illinois, which Ansbro is not. Second, it argues the Indiana statute does not require a notice of sale and, therefore, Ansbro's claim may not be based on a failure to provide such notice. Finally, Southeast argues Ansbro had knowledge at the time of the sale that the securities were unregistered and, therefore, may not claim the benefit of either state's provisions. At a minimum, South-east argues, genuine issues of material fact are raised respecting Ansbro's knowledge rendering inappropriate the granting of summary judgment. The court addresses each argument in turn.

## II. Applicability of Illinois Blue Sky Act

■ As an initial matter the parties dispute the applicability of Illinois' Blue Sky law to the transaction in question. Their dispute centers around whether the Illinois law governs 1) generally sales which are arguably carried out in Illinois or 2) only sales of securities to residents of Illinois or to persons in Illinois at the time of the sale. The dispute is significant because Ansbro purchased the securities from Indiana where he is a resident. The defendants all do business in Chicago, Illinois and the offering emanated from Chicago. Thus, if the narrow interpretation of the Act's provisions is accepted, Ansbro, a nonresident of Illinois who purchased the securities from Indiana, would not be entitled to the protections of the Illinois Blue Sky Act.

The Illinois Supreme Court has recently addressed this precise issue in *Benjamin v. Cablevision Programming*, 114 Ill.2d 150, 102 Ill.Dec. 296, 499 N.E.2d 1309 (1986). The briefs in this case were submitted well in advance of the decision in *Benjamin*, but both parties have indicated (through letters to the court) that *Benjamin* supports their view. Ansbro is right and Southeast Energy is wrong.

In *Benjamin*, the plaintiff, a resident of California, purchased a limited partnership interest in Cablevision, an Illinois limited partnership. Plaintiff had never set foot in Illinois in connection with the sale. He was solicited in California, received documents regarding the sale in the mail, signed the agreement in California, and sent the agreement and payment to Chicago. Cablevision never filed a registration statement and plaintiff sought to rescind the agreement. *Benjamin*, 114 Ill.2d at 151-52, 102 Ill.Dec. at 298-99, 499 N.E.2d at 1311-12.

The circuit court dismissed the action and the appellate court affirmed. In affirming the circuit court, the Illinois appellate court held that in determining whether a sale of a security is a "sale in this state" as is required in the Act, the court should examine the purchaser's location and actions in connection with the sale, not the seller's. *Benjamin v. Cablevision Programming,* 132 Ill.App.3d 943, 87 Ill.Dec. 900, 478 N.E.2d 39 (1985). The Illinois Supreme Court reversed.

In support of its construction of the Act, the Illinois Supreme Court examined the plain language of the Act and its purpose. The court agreed that the Securities Act reflected a paternalistic concern that investors not be defrauded; the court concluded, however, that Illinois' concern for preventing fraud extends also to nonresidents. "Just as this State has an interest in protecting those within its borders from unscrupulous conduct, it also must be concerned with and seek to prevent those within its borders from engaging in such conduct." *Benjamin,* 114 Ill.2d at 156, 102 Ill.Dec. at 302, 499 N.E.2d at 1315. The court went on to note that the Act's broad definition of a sale encompassed many types of activity beyond those commonly understood to be sales (for example, in commercial law). The court concluded that this broad definition of sale would be disserved by a rule requiring reference only to the purchaser's conduct. The court held that the Illinois Securities Act is triggered when a transaction has "some physical nexus with Illinois," satisfies the statutory definition of a sale, and takes place in Illinois. *Id.*

The court concludes Illinois' securities laws apply to this claim. The undisputed facts are that defendants solicited Ansbro from Illinois. Defendants sent out information regarding the investment from Illinois. Ansbro signed the agreement, sent it to Illinois, and directed the payment of funds to Illinois. *See Benjamin,* 114 Ill.2d at 158, 102 Ill.Dec. at 302–03, 499 N.E.2d at 1315–16. These activities occurred in Illinois, have a physical nexus with Illinois, and can satisfy any of a number of definitions of a sale of securities. ("A contract to sell," "an offer," "solicitation of an offer," "an offer to buy"). Thus, Illinois' securities laws apply to this transaction.[1]

### III. Registration in Illinois

Section 13 A of the Illinois Securities Law of 1953 allows a purchaser of securities to rescind any sale made in violation of that law with certain exceptions not relevant here. Ill.Rev.Stat. ch. 121–½, § 137.-13 A (1985). A purchaser must give notice of his election to rescind to each person from whom recovery is sought (by tendering the securities back to the issuer) within six months after the purchaser has "knowledge that the sale of securities to him is voidable." *Id.* at § 137.13 B.

Defendants do not contest they failed to register the securities in violation of the Act. *See id.* at 137.12(A) & (D). Nor do they raise any issue regarding the tender of securities to each of them or Ansbro's status as a purchaser. Nonetheless, the court's review of the statement of uncontested facts submitted in support of Ansbro's motion reveals that Ansbro has not shown that he tendered the securities to defendants or gave notice of his election to rescind. The failure of any of the defendants to identify this failing may be an indication that, in fact, Ansbro did tender the securities and offered each of the defendants the opportunity to repurchase the partnership interest. But the court has no way of knowing for certain if the securities were tendered to defendants, or whether they were tendered within six months of acquiring knowledge of the voidability of the sale. These facts must be demonstrated not only to establish a right of rescission but also to establish from whom the rescissionary relief may be obtained. As will become apparent later, a party can only be liable under section 13 A if he is presented

---

1. The parties do not dispute that Ansbro, because he is a resident of Indiana, enjoys the protection of Indiana's Blue Sky Laws as well.

with the repurchase of the securities but refuses.

Thus, summary judgment cannot be granted under Illinois law at this time. This is unfortunate because the court may, in fact, be able to grant summary judgment in this case if certain allegations are proved and presented in a 12(e) statement of undisputed facts. As this court has had occasion to note before "[Ansbro's] motion for summary judgment must be denied; not because [Ansbro] may not be entitled to judgment as a matter of law, but because [he] has failed to demonstrate facts which entitled [him] to judgment as a matter of law." *Abrams v. City of Chicago*, 635 F.Supp. 169, 174 (N.D.Ill.1986).[2]

Given the relative merit of Ansbro's motion (depending on Ansbro's ability to demonstrate facts essential to a judgment) and the number of other issues essential to disposition of this claim, the court goes on to address several arguments raised on this motion that do not have merit given the factual development of this case and the relevant law. They should not be raised on a renewed motion for summary judgment unless the facts have changed.

a) Knowledge of Ansbro.

Instead of identifying the absence of facts showing when, how, and to whom the securities were tendered by Ansbro, defendants concentrated their attention on Ansbro's knowledge that the securities were unregistered. They claim, albeit as a defense under the Indiana statute (having predicted the Illinois statute did not apply), that Ansbro had notice at the time of purchase that the securities were unregistered and the transaction was illegal. At the very least, they argue they have shown a genuine issue of material fact regarding Ansbro's knowledge which precludes summary judgment. The argument directed at the Indiana statute is relevant to the Illi-

nois statute with a few exceptions. The Indiana statute requires a purchaser not have knowledge of a violation, while the Illinois statute requires the purchaser not have knowledge of the voidability of the transfer (more about this distinction later). The relevant consideration under the Indiana statute is knowledge *at the time of the transaction,* while under the Illinois statute, the relevant time period is knowledge *up to six months prior to bringing the claim* (but within three years of the transaction). *Compare* Ill.Rev.Stat. ch. 121½, § 137.13 (1985) *with* Ind.Code. § 23–2–1–19(a) (1985). With these exceptions in mind, the court addresses the knowledge arguments of defendants.

Ansbro purchased the limited partnership interests in December, 1980. Ansbro submits two affidavits stating he was without knowledge that a registration statement had not been filed with the Illinois or Indiana Secretaries of State Offices regarding his December, 1980 purchase until he received notice from both offices that the securities were not registered. It is undisputed that within six months from acquiring that knowledge he amended his complaint to add the rescission counts to his claim.

Defendants argue Ansbro had knowledge the securities were unregistered at the time he purchased them. They have submitted the following evidence in support of their argument. First, Ansbro received the prospectus accompanying the sale of securities and Ansbro admits that he read it carefully several times prior to signing the subscription agreement. Ansbro and Spaeth, the broker in the transaction, both testified in their depositions that they discussed the prospectus. The Subscription Agreement signed by Ansbro states that Ansbro carefully read the prospectus and "is fully familiar with the contents therein." The prospectus states in

**2.** The court notes that neither party has complied with Local General Rules 12(e) and (f) to the fullest extent possible. As this court noted in *Abrams,* Rules 12(e) and (f) contemplate statements of undisputed facts and genuine issues separate from any recitation of facts in a memorandum. The rule also contemplates cita-

tion to admissible evidence showing an established fact and/or a genuine issue. Should Ansbro renew his motion for summary judgment, strict compliance with this court's decision in *Abrams* will be required to facilitate an understanding of the undisputed facts and/or genuine issues.

capital letters on the third page the following:

IT IS NOT ANTICIPATED THAT THE UNITS WILL BE REGISTERED UNDER THE SECURITIES LAWS OF ANY STATE.

Next, Southeast Energy argues that Spaeth acted at all times as Ansbro's agent and investment advisor. Spaeth testified in his deposition that defendant Filler and he had a conversation wherein Filler told him that the offering had been "blue-skyed" in Indiana. Moreover, Southeast Energy argues that Spaeth acquired, from previous securities transactions, the knowledge that the sale of unregistered securities was unlawful. Because Spaeth possessed this knowledge, Southeast argues Ansbro must be held to have known because Spaeth was Ansbro's agent.

Southeast Energy further argues Ansbro knew or should have known the securities were unregistered because Ansbro was a sophisticated investor who from previous experience in investments knew securities had to be registered. Moreover, Ansbro had familiarity with the technical aspects of the investment (how fuel was developed from ethanol alcohol) which shows he was not an uninformed or innocent investor.

Finally, Southeast Energy argues that Ansbro knew, from conversations with Spaeth, that Spaeth's employer, Oppenheimer & Co., was not participating in the sale of the securities. Southeast Energy argues this fact gave notice to Ansbro that the transaction was not closely scrutinized and the transaction might not be completely proper. If Oppenheimer had backed the transaction, Ansbro could have assumed the legality of the transaction; without Oppenheimer's backing, the transaction would be more questionable. Spaeth's deposition testimony states that he informed Ansbro that Oppenheimer was not backing the deal, but Ansbro denies having knowledge that the transaction was not being done through Oppenheimer. Thus, Southeast Energy argues this evidence shows that Ansbro purchased the securities "with full knowledge that Spaeth was making the sale to him behind Oppenheimer's back because the securities were unregistered." *Defendant's Memorandum in Response* at 7.

■ A purchaser may seek rescission under § 13 of the Illinois securities Act within six months of acquiring "knowledge of the sale of the securities to him is voidable." Ill.Rev.Stat. ch. 121½, § 137.13(A) (1985). Failure to comply with the Act's registration requirements is a violation of the Act for which a party may seek rescission. *Id.* at 137.12(A) & (D); *Gowdy v. Richter*, 20 Ill.App.3d 514, 20 Ill.App.3d 514, 314 N.E.2d 549 (1974). Knowledge that the stock is not registered, however, is not necessarily synonymous with knowledge that the sale is voidable. *Martin v. Orvis Bros & Co.*, 25 Ill.App.3d 238, 323 N.E.2d 73 (1974). Knowledge that the sale is voidable is a mixed question of fact and law on which a layman is entitled to first acquire knowledge from an attorney. *Frendreis v. Financial Concepts, Ltd.*, 106 Ill.App.3d 438, 62 Ill.Dec. 332, 435 N.E.2d 1305 (1982). The test encompasses several inquiries: did the purchaser know the securities were unregistered, did the purchaser know that unregistered securities are illegal, and did the purchaser know that an illegal sale is voidable? *Id.* at 439, 62 Ill.Dec 332, 435 N.E.2d at 1305.

■ While the statute requires knowledge of the voidability of the sale, it does not, contrary to Ansbro's argument, require actual knowledge that the sale is voidable. *Buehl v. Dayson*, 127 Ill.App.3d 958, 963, 82 Ill.Dec. 869, 469 N.E.2d 403, 408 (1984). A purchaser has six months from the time he acquires constructive knowledge of the voidability in which to tender his securities and seek rescission. Actual knowledge of non-registration is a factor in determining the date of constructive knowledge of the voidability of the transfer. *Id.* An attorney's knowledge is imputed to his client; thus, a buyer has knowledge of voidability when his attorney receives notice from the Secretary of State that the securities are unregistered. *McPherson v. Hewitt*, 32 Ill.App.3d 435, 335 N.E.2d 606 (1975).

Thus, from the time Ansbro acquired knowledge, actual or constructive, that the securities were unregistered *and that unregistered securities were voidable*, he had six months to seek rescission of the sale. Ansbro says he first had such knowledge on the day he received notice from the Illinois Secretary of State that the securities were unregistered. The defendants assert he acquired knowledge of the securities' nonregistration even before he purchased them.

As an initial matter, the court notes that summary judgment is rarely appropriate when knowledge is an essential element in a party's entitlement to judgment as a matter of law. *See generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure, Civil 2d* § 2730 (1983). This reluctance is based, in part, on the observation that what one person knows or believes, must ordinarily be proved by circumstantial evidence. In the face of a denial of knowledge, where knowledge must be shown in order to prevail, the nonmovant is put to the task of proving through inferences arising from other facts, of which the party should have known, that he acquired the requisite knowledge. The credibility of the party asserting no knowledge is of necessity called into question, providing further reason why summary judgment is inappropriate.

■ These ordinary difficulties are made more troublesome in this case by at least two factors: much of the evidence of what Ansbro knew is not centered on Ansbro but on persons and events surrounding him, and all of the evidence suggesting knowledge is directed at the issue of nonregistration and not voidability, which is the legally relevant standard. Ansbro insists, however, that summary judgment is appropriate in this case because Ansbro had no "actual knowledge" of nonregistration (and certainly no knowledge of voidability). That assertion merely highlights the genuine issue rather than resolves it, as a review of Southeast Energy's evidence suggests.

The statement in the prospectus that "it is not anticipated the units will be registered under the securities laws" does not even provide knowledge that the securities were in fact unregistered, let alone that the transaction was voidable. The statement only suggests the securities may not be registered; it does not indicate they will not be. It is very likely that Southeast Energy may have planned to seek an exemption from registration. This interpretation is consistent with the statement that it does not "anticipate" registration. The most favorable reasonable inference to Southeast Energy from the statement in the prospectus is that it would not seek registration of the securities. *See Anderson v. Liberty-Lobby,* —— U.S. ——, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (favorable, reasonable inferences must be decided in favor of the non-movant). Failure to seek registration in itself, however, would not give notice to Ansbro that the transaction was voidable. *E.g., Witter v. Buchanan,* 132 Ill.App.3d 273, 287, 87 Ill.Dec. 131, 133, 476 N.E.2d 1123, 1135 (1985) (purchaser cannot have knowledge of voidability during pendency of proceeding challenging exemption from registration).

Southeast Energy argues, however, that a sophisticated investor, like Ansbro, who has engaged in previous investments which he knew had to be approved, would know the effect of non-registration of these securities. But Ansbro could reasonably infer voidability was the consequence of non-registration only if he had encountered voidability previously. If all of his prior transactions had gone off without a hitch, he could reasonably conclude that while registration was important, it would not mean that he could back out of the deal and get his money back. Southeast Energy has not produced evidence that shows previous dealings or knowledge learned from previous actions which would support an inference that Ansbro knew that voidability was a consequence of non-registration. Southeast Energy's hypothesis becomes even more attenuated when the court considers that Ansbro's previous investment experience was under Indiana, not Illinois law.

Southeast Energy's reliance on information known to Spaeth as Ansbro's alleged agent is confusing. Spaeth testified in his deposition he had a conversation with Filler wherein he asked Filler if the registration of the securities were "blue-skyed."[3] Spaeth cannot remember Filler's exact response but he came away from the conversation with the impression that everything was in order. Filler has submitted an affidavit denying that he ever told Spaeth the securities had been blue-skyed. Southeast Energy argues this dispute creates a genuine issue of material fact precluding summary judgment

Even if the court assumes that Spaeth were Ansbro's agent, an assertion both Spaeth and Ansbro vigorously deny, and even if the court assumes information to Spaeth as Ansbro's agent is information to Ansbro, the dispute over whether Filler's statement was ever made may not be material to plaintiff's motion. If the court accepts as true Filler's affidavit that he never informed Spaeth the transaction was approved, it does not follow that Filler told Spaeth the transaction was not blue-skyed and was not approved. Filler does not state he informed Spaeth of the non-registered nature of the securities; he simply denies saying they were registered. On the issue of Ansbro's knowledge, Southeast must show not merely that Ansbro knew that Filler did not say the securities were *registered*, but that Ansbro knew they were *unregistered* (if, for example, Filler had said unequivocally the securities are unregistered).

A reasonable, though not the only or likely inference from this conversation might be that in the face of a specific request, "Are these securities registered?" anything other than an unequivocal "yes,"
means "no". Spaeth certainly did not interpret Filler's statement in that manner, but on this motion, the defendants are entitled to all reasonable inferences. A jury might reasonably conclude that Filler's response indicated to Spaeth that the securities were unregistered and, if Spaeth is Ansbro's agent, the knowledge is imputed to Ansbro.

Southeast Energy is correct in its assertion that there are genuine issues of fact surrounding the issue of Spaeth's agency. Spaeth and Ansbro insist Spaeth was Southeast Energy's agent; Southeast denies it and claims Spaeth was Ansbro's agent. Perhaps Spaeth, as the broker for the deal, was an agent for both parties. The court simply cannot conclude as a matter of law on this record whose agent Spaeth was. And to grant this motion, the court must answer the question. If Spaeth were Ansbro's agent, and if he had knowledge the securities were unregistered, Spaeth would have knowledge of the voidability of the sale if his experience as a broker were such that knowledge of the unregistered securities would inform him of the voidability of the sale. As Ansbro's agent, Spaeth's knowledge is attributable to Ansbro. In this sense the factual disputes surrounding Spaeth's agency are material to the central issue: Ansbro's knowledge of voidability.

Thus, the court concludes that the issues surrounding Spaeth's agency and what Filler said to Spaeth raise an inference that Ansbro had knowledge of the voidability of the sale prior to receiving notice from the respective Secretaries of State. Ansbro's motion for summary judgment may not be granted in the face of these disputed facts.

3. The difficulty of the issue is enhanced by the affidavit submitted by Filler. Filler's affidavit presents a negative "I never told Spaeth the securities were registered." From this, Southeast urges the court to conclude a positive: Filler told Spaeth the securities were unregistered. The two are not the same. Spaeth came away from the meeting with the impression the securities were registered. If Filler had testified he stated positively the securities were unregistered a genuine issue is raised, and the court would have to judge the credibility of the two parties at trial. But Filler's statement that he simply never said the securities were registered makes possible no conflict with Spaeth's impression they were registered. (Perhaps Filler indicated but never said the securities were registered.) It is because Southeast is entitled to any favorable inference, and *only* because Southeast is entitled to favorable inferences, the court concludes summary judgment may not be granted at least with respect to the knowledge issue.

b) Liability of the Defendants.

■ Ansbro seeks to hold all the Southeast Energy defendants liable to him for his rescissionary relief and for damages from lost investment opportunities. Ansbro relies on the mere partnership structure to support his conclusion that each of the subgroups is responsible to him for the alleged violation of Section 13A. Southeast Energy argues the intricate and interconnected structure of the partnerships alone is insufficient to hold each subgroup liable.

The joint and several liability provisions of the Act impose liability on the issuer of the securities or a party on whose behalf the sale was made, and upon any dealer, underwriter or salesman who participated in the sale. Ill.Rev.Stat. ch. 121½, § 137.13 (1985). When the issuer is a corporation or association, each officer or director who participated in or aided in the making of the sale is liable under the Act. *Id.* The statute also makes a controlling person liable for violations of the Act, and controlling person is defined in Section 137.2–4:

> " 'Controlling person' means any person selling a security, or group of persons acting in concert in the sale of a security, owning beneficially (and in the absence of knowledge, or reasonable grounds for belief, to the contrary, record ownership shall for the purposes hereof be presumed to be beneficial ownership) either (i) 25% or more of the outstanding voting securities of the issuer or such security where no other person owns or controls a greater percentage of such securities, or (ii) such number of outstanding securities of the issuer of such security as would enable such person, or group of persons, to elect a majority of the board of directors or other managing body of such issuer."

*Id.* at 137.2–4.

Thus, the Act provides for any number of theories under which each of the Southeast Energy defendants could be found jointly or severally responsible for this violation. Ansbro has not articulated how each defendant satisfies a statutory category upon whom liability could be imposed. Nor has Ansbro presented evidence of each defendant's participation in the sale in its submissions or in its 12(e) statement of undisputed facts. In the context of this case, the court cannot state who would be liable for this transaction on this record. For example, Southeast Energy sold the securities to Ansbro through Spaeth. Assuming Southeast Energy is liable for the violation,[4] Southeast's general partner, Synergy partnership would also be liable if it controlled Southeast Energy or participated in the sale of these securities. But Synergy Management Associates is identified as the manager of Southeast Energy so maybe it is the controlling person. Because defendant Bobbins is general partner of Synergy Management he might be liable as the controlling person of the controlling limited partner of Southeast Energy. But defendant Filler is identified as the managing general partner of Synergy Management, the managing limited partnership of Southeast Energy, so perhaps he is a controlling person and not Filler.

Of course, the possibility remains, given the second definition of a controlling person (so many shares to elect the managing body of the issuer) that all these defendants (excepting Spaeth and Oppenheimer) are controlling persons. That is the inference Ansbro asks us to draw from the structure of the organizations themselves. And it is a reasonable inference. But it is not the only reasonable inference, and on this motion, the defendants as nonmovants once again get all favorable inferences. The liability trail could conceivably end at Southeast Energy or somewhere close thereafter. *See Froehlich v. Matz*, 93 Ill. App.3d 398, 407, 48 Ill.Dec. 781, 789, 417 N.E.2d 182, 190 (1981) (while overt action is not always required, there must be some

---

**4.** The court agrees with Ansbro that Southeast, as issuer of the securities, and Spaeth, as broker for the sale, are likely to be liable for any violation. The court also agrees that the Southeast defendants may not rely on the intricate and confused partnership structure to escape liability under the Act. Nonetheless, the court may not simply disregard the statutory prerequisites to the imposition of liability in concluding which of the Southeast defendants are liable.

showing of assent, approval or concurrence, albeit tacit approval, in the action of the group selling the securities, before an individual will be held liable for the actions of the controlling group). In the absence of more specific evidence of participation in the sale or control of the issuer, summary judgment must be denied.

### IV. Registration in Indiana

 As the court noted earlier, a purchaser of securities may not elect the remedy of rescission if he was aware of the violation of Indiana law at the time of the transaction. Ind.Code at § 23–2–1–19(a). Knowledge of nonregistration alone would satisfy this bar to the remedy of rescission. Summary judgment would, therefore, be clearly inappropriate under the less restrictive standard in Indiana for the reasons identified throughout this opinion. The court need not explore the issues under Indiana law any further, at this time, on this record.

### V. Conclusion

Ansbro's motion for summary judgment is denied because, based on the record presented at this time, genuine issues of material fact exist which preclude disposition of these claims in a summary fashion.

IT IS SO ORDERED.