MITEE RACERS, INC., Plaintiff-Appellant, v. THE CARNIVAL-AMUSEMENT SAFETY BOARD *et al.*, Defendants-Appellees.

Second District    No. 86—0539

Opinion filed February 23, 1987.—Rehearing denied March 30, 1987.

Diver, Bollman, Grach & Quade, of Waukegan, and Arthur M. Scheller, Jr., of Park Ridge, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (James P. Nally, Roma Jones Stewart, and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Mitee Racers, Inc., appeals from an order of the circuit court of Lake County which on administrative review affirmed the determination of the Carnival-Amusement Safety Board (Board) that the provisions of the Carnival and Amusement Rides Safety Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 4051 *et seq.*) applied to the go-cart operation run by plaintiff.

Plaintiff raises four issues on appeal: (1) whether the term "amusement ride" as defined in the Act includes a go-cart track; (2) whether the term "carnival" as defined in the Act includes a go-cart business; (3) whether the Act provides authority to issue "stop operation orders" for reasons other than the operation of amusement rides under hazardous or unsafe conditions; and (4) whether the Board's de-

cision was against the manifest weight of the evidence.

Plaintiff is an Illinois corporation with its principal place of business in Waukegan, Illinois, and is engaged in the business of renting gasoline-powered motor vehicles, commonly known as race carts or go-carts, to occasional applicants for various amounts of time.

A letter was sent to KZK, Inc., a former tenant of the premises operated by plaintiff, by Carl Kimble, chief inspector of the Carnival and Amusement Ride Inspection Division of the Department of Labor on September 3, 1985. It stated that the business had failed to comply with the Act by failing to submit an application, permit fee, inspection fee, and proof of insurance. A "stop operation order" was issued to KZK, Inc., on September 18, 1985, for failure to have proper insurance and permits, and the order was applied to plaintiff.

Plaintiff's attorney sent a letter to chief inspector Carl Kimble requesting that the "stop operation order" be rescinded as the Act was not applicable to plaintiff's business operation. Following Kimble's reply that the order could not be rescinded as go-carts fit the Act's definition of "amusement ride" and plaintiff's over-all operation fits into the generic definition of "carnival," plaintiff filed a petition for review by the Carnival-Amusement Safety Board. The petition stated that plaintiff's business consists of the rental of go-carts, that the renter of each go-cart drives the vehicle upon a paved racetrack for the period of time contracted for, that the vehicles are built and equipped to carry one individual, the driver, that each driver is his own operator and must step on the accelerator to get the vehicle to move, and that plaintiff does carry $500,000 of liability insurance on its business operation.

The Board, in a letter dated November 26, 1985, accepting plaintiff's allegations of fact, found that a go-cart track carries a passenger, whether or not that passenger also steers and accelerates the vehicle, over and around a restricted course for the primary purpose of giving its passengers amusement, pleasure, thrills, or excitement. It is, therefore, an "amusement ride" as defined by the Act. The Board also found that the operation of a go-cart track is the operation of a "carnival" as defined by the statute so that, as plaintiff did not obtain a permit or the necessary insurance required by the Act, the "stop operation order" would not be rescinded.

Plaintiff then filed a complaint for administrative review of the Board's decision pursuant to section 2—13 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 4063). The trial court entered an order May 23, 1986, affirming the Board's order refusing to rescind the "stop operation order." The court found that plaintiff's go-cart operation was

subject to regulation by the Act and that failure to have proper insurance and a permit in and of itself made plaintiff's operation unsafe and hazardous because the operation had not been properly inspected by the appropriate authorities. This appeal followed.

The Carnival and Amusement Rides Safety Act was approved August 3, 1984, and became effective January 1, 1985. The Act provides in part pertinent to this appeal:

" 'Amusement ride' means any mechanized device or combination of devices, including electrical equipment which is an integral part of the device or devices, which carries passengers along, around, or over a fixed or restricted course for the primary purpose of giving its passengers amusement, pleasure, thrills, or excitement." (Ill. Rev. Stat. 1985, ch. 111½, par. 4052(4).)

" 'Carnival' means an enterprise the principal business of which is offering amusement or entertainment to the public by means of amusement attractions or amusement rides." (Ill. Rev. Stat. 1985, ch. 111½, par. 4052(5).)

"No amusement ride or amusement attraction shall be operated at a carnival or fair in this State without a permit having been issued by the Director to an operator of such equipment." (Ill. Rev. Stat. 1985, ch. 111½, par. 4060.)

Therefore, in order for plaintiff to be required by the Act to have a permit in order to operate its go-cart track, the track must be an "amusement ride" operated at a "carnival."

First, there is no merit to plaintiff's contention that the Board's finding was contrary to the manifest weight of the evidence as there are no factual disputes here and the issue is one of law rather than fact. Any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created. (*Schalz v. McHenry County Sheriff's Department Merit Com.* (1986), 113 Ill. 2d 198, 202, 497 N.E.2d 731.) The scope of an agency's authority is a question of law, not of fact; the determination of the scope of an agency's power and authority is a judicial function, not one to be finally determined by the administrative agency. (*Ted Sharpenter, Inc. v. Illinois Liquor Control Com.* (1986), 148 Ill. App. 3d 936, 941, 499 N.E.2d 669; *Ogden-Fairmount, Inc. v. Illinois Racing Board* (1986), 147 Ill. App. 3d 789, 796, 498 N.E.2d 882.) On appeal from an administrative agency's action, the agency's construction of a statute or rule is to be considered persuasive, but it is not binding on the court, and the court will not be bound by an interpretation that is clearly erroneous, arbitrary, or un-

reasonable. *Ted Sharpenter, Inc. v. Illinois Liquor Control Com.* (1986), 148 Ill. App. 3d 936, 942, 499 N.E.2d 669.

In interpreting a statute, the function of the court is to ascertain and give effect to the intent of the legislature. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, 498 N.E.2d 1102.) In determining legislative intent, consideration must be given to the entire statute, its nature, object, and purpose to be attained, and the evil to be remedied. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 157, 499 N.E.2d 1309.) Where the statute in question has not yet been judicially interpreted, the court is guided by both the plain meaning of the language in the statute as well as legislative intent, and when the statutory language is clear and unambiguous, the court's only function is to enforce the law as enacted by the legislature. (*Eckman v. Board of Trustees for the Police Pension Fund* (1986), 143 Ill. App. 3d 757, 762, 493 N.E.2d 671.) When, however, a statute is susceptible of two interpretations, as is the case here, it becomes proper to examine sources other than its language for evidence of legislative intent, and the legislative history of the statute in question is, of course, relevant. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 279, 469 N.E.2d 167.

After a thorough examination of the legislative history of the Act, it is evident that the legislature intended to regulate all mechanized amusement rides presenting a potential danger to the public. The Act was passed in response to numerous injuries occurring as a result of amusement park ride accidents, including a serious accident at Six Flags Over Great America (Great America) near Gurnee, Illinois. During senate debates, the following exchange took place between Senator Schuneman and Senator Welch, the senate sponsor of the bill:

> "Senator Schuneman: *** I'm curious to know which rides are affected. I *** I think of a guy in my district, for example, who has fixed up a little kid train, and he goes around to all the different little local fairs in the communities. He's taken his garden tractor and remodeled it into what looks like a *** a railroad locomotive and *** and built a bunch of cars that he tows behind it. Is that *** is that a ride that's going to come under the jurisdiction of this bill?
> ***
> Senator Welch: Senator, reading the definition of amusement ride, I would say, yes. Let briefly state that, 'An amusement ride means any mechanized devise or combination of devises which is an integral part of the device or devices which carries passengers along, around or over a fixed or restricted

course for the primary purpose of giving its passengers amusement, pleasure, thrills or excitement.' I would say, yes.
\* \* \*

Senator Schuneman: What about the farmer in my district that has a bunch of ponies and he's rigged up a wheel and the ponies are attached to the wheel and it goes around and around in a circle. Now, I assume that that's a mechanical device that \*\*\* to which those ponies are \*\*\* attached. Is that going to have to be inspected and licensed by the State now?
\* \* \*

Senator Welch: I \*\*\* I'm trying to visualize what \*\*\* this would be a wheel with ponies pulling individuals riding on a \*\*\* on a circumscribed route on top of a pony. If it's nonmechanized, it wouldn't be included, if it was mechanized it would be.
\*\*\* Senator Schuneman: Well, of course, it's mechanized to the extent that it has gears and \*\*\* and \*\*\* metal, it's like anybody who's ever taken their kids to a pony ride, it's that sort of a ride. Where are these inspections going to be made on \*\*\* on these people who own one and two and three rides? Where are you going to make the inspections?
\* \* \*

Senator Welch: Before they are able to set up the ride, they have to have a permit to do so, and they will have to apply for the permit and at that point they will be inspected through this board or Department of Labor.
\* \* \*

Senator Schuneman: Well, \*\*\* do they leave the \*\*\* so, do they have to take the ride to the inspector somewhere or does the inspector go to the ride or what happens?
\* \* \*

Senator Welch: No, we'll have mobile inspectors going out to where the rides are.
\* \* \*

Senator Welch: \*\*\* I would like to point out that there are going to be professional inspectors doing this inspection throughout the State. I think that this is a bill whose time has come. We have been regulating so many professions and businesses throughout the State from barbers and beauticians, I think that it's time that we finally regulate a area which involves so many children who can be injured." 83d Ill. Gen. Assem., Senate Proceedings, June 28, 1984, at 42-45.

■ This excerpt from the legislative history of the Act makes clear that the legislature intended that the Act be broadly applied to all mechanized amusement rides in the interests of preventing danger to children or any other users of the rides.

Plaintiff argues, however, that its go-cart track is not an amusement ride because a go-cart does not carry passengers or operate on a fixed or restricted course. It also contends that the Act is a penal statute which must be strictly construed as it contains the following provision:

"Any person who operates an amusement ride or amusement attraction at a carnival or fair without having obtained a permit from the Director or who violates any order or rule issued by the Director or Board under this Act is guilty of a Class A misdemeanor. Each day shall constitute a separate and distinct offense." Ill. Rev. Stat. 1985, ch. 111½, par. 4065(1).

■ As the Act does command certain acts and establishes penalties for their violations, it falls under the generally accepted definition of a penal statute. (*Cook County v. Thomas Recreational Vehicle* (1979), 68 Ill. App. 3d 582, 584, 386 N.E.2d 591; see also 73 Am. Jur. 2d *Statutes* sec. 12, at 276 (1974).) Generally, penal statutes should be strictly construed (*People v. Rink* (1983), 97 Ill. 2d 533, 541, 455 N.E.2d 64; *People v. Mack* (1985), 133 Ill. App. 3d 788, 794, 479 N.E.2d 445) and must be strictly limited in their interpretation to such objects as are obviously within their terms (*Bismarck Hotel Co. v. Petriko* (1961), 21 Ill. 2d 481, 486, 173 N.E.2d 509; *People v. Bennett* (1983), 120 Ill. App. 3d 144, 149, 457 N.E.2d 986; *Cook County v. Thomas Recreational Vehicle* (1979), 68 Ill. App. 3d 582, 584, 386 N.E.2d 591). A court, however, must give effect to the legislative intent and must not read a statutory enactment rigidly as to defeat that intent. (*People v. Jordan* (1984), 103 Ill. 2d 192, 205, 469 N.E.2d 569.) Moreover, the right of the State to regulate all places of public amusement is universally recognized. *Pickett v. Kuchan* (1926), 323 Ill. 138, 140, 153 N.E. 667; see also *City of Chicago v. Green Mill Gardens* (1922), 305 Ill. 87, 137 N.E. 126.

■ ■ Here, it is apparent from the legislative history quoted above that the legislature's definition of an amusement ride was intended to include mechanized devices such as go-carts used on a restricted go-cart track which pose a potential danger to children and the public. Plaintiff argues that a go-cart does not carry a "passenger" but a "driver," stating that the term "passenger" has been defined as one who travels by some public conveyance, especially one who has no part in the operation of the conveyance. Webster's also

defines "passenger" as "traveler, wayfarer," "traveler in a public conveyance," and "one who is carried in a private conveyance (as an automobile) for compensation or expected benefit to the owner." (Webster's Third New International Dictionary 1650 (1986).) A "passenger" is commonly considered one who gives compensation for a ride. (See, e.g., Rotheli v. Chicago Transit Authority (1955), 7 Ill. 2d 172, 177, 130 N.E.2d 172; Leonard v. Stone (1942), 381 Ill. 343, 345, 45 N.E.2d 620.) A rider in a go-cart, therefore, clearly can be considered a "passenger," and a go-cart track is included in the definition of "amusement ride" contained in the Act. Further, that part of the definition of "amusement ride" which refers to carrying passengers along, around, or over a "fixed or restricted" course is broad enough to include both rides which are attached to a mechanical device and travel a fixed path and rides which are not attached but travel within a restricted course such as on go-cart tracks.

Plaintiff also contends that, even if go-carts can be considered an "amusement ride," its go-cart operation is not a "carnival" under the Act because a carnival must have multiple amusement rides. "Carnival" is defined as "an enterprise the principal business of which is offering amusement or entertainment to the public by means of amusement attractions or amusement rides." (Ill. Rev. Stat. 1985, ch. 111½, par. 4052(5).) As it has been determined that go-carts fit the definition of "amusement ride," plaintiff's business is within the statutory definition of a carnival as its principal business is offering amusement or entertainment to the public by means of its go-carts, an amusement ride. It is also clear from the legislative history of the Act that operations with only one ride were intended to be covered by the Act. During the debates, Senator Schuneman asked where inspections would be made on people who own "one and two and three rides," with Senator Welch responding that "[b]efore they are able to set up *the ride*, they have to have a permit to do so." (Emphasis added.) 83d Ill. Gen. Assem., Senate Proceedings, June 28, 1984, at 44.

That small operations were intended to be covered by the Act is also indicated by the comments of Senator Kustra, the senate sponsor of House Bill 3277, the predecessor of the bill which became this Act. Senator Kustra stated in the debates on Senate Bill 1425 that the intention was to have a sliding scale for permit fees with a lesser charge for a small, kiddy ride and the maximum $50 charge for large rides at a large park like Great America. (83d Gen. Assem., Senate Proceedings, June 28, 1984, at 41.) Section 2—8 of the Act provides that "[t]he Board shall determine a schedule of permit fees

not to exceed $50 for *each* amusement ride or amusement attraction." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111½, par. 4058.) Thus, because there is a permit fee for each amusement ride or attraction, the Act was intended to regulate small as well as large operations. The definition does state the plural "amusement rides." However, when it seems apparent that a literal reading would produce a result not intended, the literal meaning may be altered to express the true legislative purpose. (*Thoman v. Village of Northbrook* (1986), 148 Ill. App. 3d 356, 359, 499 N.E.2d 507.) We believe that the comments during debates on this legislation indicate the intent was to apply the law to one or more rides. To remedy the perceived problem of an unsafe ride, it would be illogical not to cover a business with one ride where it is the same ride as in an operation which might also have a second type of ride. Moreover, it would circumvent the intent of the legislature to narrowly construe the Act to only apply to multiple amusement rides or attractions and allow an operation with one dangerous ride or attraction to go unregulated where the potential harm is the same.

Also, although a go-cart track is not something generally considered to be a "carnival," the legislature has the power to make any reasonable definition of the terms in a statute, and such definitions, for the purpose of the Act, will be sustained. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 163-64, 499 N.E.2d 1309.) The Board and the trial court correctly determined that plaintiff's go-cart operation is an "amusement ride" and a "carnival" as contemplated by the legislature and is subject to regulation by the Act.

Plaintiff finally argues that there was no authority under the Act to issue a "stop operation order" as the Act only provides for the issuance of such an order if the amusement ride "has been determined after inspection to be hazardous or unsafe." (Ill. Rev. Stat. 1985, ch. 111½, par. 4062.) Plaintiff maintains that the Department of Labor had no authority to order the cessation of its operation for failure to have a permit or proper insurance. We agree.

The extreme sanction of ordering an immediate cessation of the operation of any amusement ride or attraction given to the Director or an inspector hired by the Department of Labor under section 2—12 of the Act is specifically limited to a situation where "it has been determined after inspection to be hazardous or unsafe." (Ill. Rev. Stat. 1985, ch. 111½, par. 4062.) One who operates without a permit or violates any rule or order issued by the Director or Board under the Act is guilty of a Class A misdemeanor and each day con-

stitutes a separate and distinct offense under section 2—15 (Ill. Rev. Stat. 1985, ch. 111½, par. 4065(1)). We also note that section 2—15 also provides that any person who interferes with, impedes, or obstructs the proper State officials in the performance of their duties is guilty of a Class A misdemeanor. (Ill. Rev. Stat. 1985, ch. 111½, par. 4065(2).) Thus, distinct remedies are provided under the Act to address this particular violation, and there is no statutory authority for a "stop operation order" where the violation is the failure to obtain a permit or proper insurance. Nevertheless, if, for example, someone operates without a permit or proper insurance and after inspection the operation is determined to be hazardous or unsafe, a temporary stop operation order is authorized. Accordingly, the failure to have a permit or proper insurance does not constitute a hazardous or unsafe operation. The Board erred in this finding and that portion of the Board's order and the judgment of the circuit court must be reversed.

For the foregoing reasons, the judgment of the circuit court of Lake County affirming the findings of the Carnival-Amusement Safety Board is affirmed except as it pertains to the "stop operation order" issued by the Board which is reversed.

Affirmed in part and reversed in part.

WOODWARD and DUNN, JJ., concur.