WILLIAM KRALL, d/b/a Golden Auto Sales, Plaintiff-Appellee, v. THE SECRETARY OF STATE, Defendant-Appellant.

Second District   No. 2—87—0715

Opinion filed April 21, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellant.

Dennis J. Riley, of Byron, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, the Secretary of State of the State of Illinois (Secretary), appeals from an order of the circuit court which reinstated the car dealership operator's license of the plaintiff, William Krall. On appeal, the Secretary contends that the circuit court's finding was against the manifest weight of the evidence because plaintiff failed to satisfy the requirement of maintaining an established place of business pursuant to section 5—100 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100).

Plaintiff had been issued an Illinois Dealer's Certificate of Authority (license) which authorized him to sell or otherwise deal in used cars. For the past eight years, plaintiff owned and operated a used car dealership located in Byron, Illinois. For the past three years, plaintiff has operated his barbershop, rent-a-space business, and used car dealership out of the same two-story frame building.

On the north side of the building, plaintiff had a barbershop which, through an archway, opened up into an adjoining room. The barbershop was also accessible from an outside entry way. The east half of the adjoining room was used to operate plaintiff's used car dealership while the west half was used to operate his rent-a-space business. A lot located on the south side of the building displayed used cars. In the area directly behind that lot, plaintiff rented spaces for $10 per week plus $100 over the price at which a lessee would sell his or her car. The barbershop operated on the largest floor space, yet the used car dealership generated the largest gross income. The building also served as plaintiff's residence, although access to his residence could not be obtained through one of the businesses. Instead, it was necessary to go outside the building and around an eight-foot fence to enter plaintiff's residence.

On April 2, 1985, Investigator Henry (Henry) of the Secretary of State's Department of Police made a routine investigation of plaintiff's premises. After Henry entered the building through its southern door, plaintiff told him that the room they were in was used as an office for plaintiff's used car dealership. Plaintiff then produced the appropriate records for Henry to examine while he tended to a customer

in the barbershop.

Henry went outside to investigate the vehicles parked on plaintiff's southern lot. Henry noticed that many of the cars had regular license plates as opposed to dealer plates. When questioned about the cars, plaintiff explained that he operated a rent-a-space business from the same office as his used car dealership. Plaintiff further stated that the west side of the office was used for his rent-a-space business while the east side was used for the used car dealership. It is undisputed that each business had separate desks, records, phone lines, and office equipment.

Upon learning that plaintiff operated his rent-a-space business and used car dealership from the same office, Henry informed plaintiff that the businesses would have to be separated. Henry further stated that the archway connecting the barbershop and the business offices would have to be blocked off. Plaintiff requested that Henry bring his supervisor to the building to survey the premises. On April 23, 1985, Henry returned with his supervisor, Sergeant Juliano. Both investigators again informed plaintiff that the archway would have to be blocked off. Plaintiff then requested verification as to what constituted a blocked-off wall.

On June 5, 1985, Henry returned to plaintiff's building with another investigator, Sergeant Quest, in response to plaintiff's request. Again, plaintiff was advised that he must block off the archway and separate his rent-a-space business and used car dealership. During this meeting, plaintiff stated that he resided in the building. Henry informed plaintiff that he could not operate his used car dealership out of his residence. On October 27, 1985, Henry and Sergeant Juliano returned to inspect plaintiff's building. At this point, plaintiff's only change to the physical condition of the building was the installation of swinging, solid wood doors onto the archway.

On November 20, 1985, a hearing was conducted at which plaintiff was ordered to show cause why his license should not be revoked for failure to maintain an established place of business pursuant to section 5—100 of the Code (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100). After considering all the evidence, the hearing officer suspended plaintiff's license for 30 days and indicated that plaintiff's license would be revoked unless he permanently separated his barbershop and rent-a-space businesses from his used car dealership and removed his residence from the premises.

On February 14, 1986, plaintiff sought review of the hearing officer's decision. After receiving written memoranda from the parties, the circuit court found that the hearing officer's decision was against

the manifest weight of the evidence. In its written opinion, the court stated:

"A review of the evidence establishes that Plaintiff's place of business and his residence are separate and distinct. The Act uses a term *place* and *premises*. [Emphasis in original.] The word place is a very indefinite term generally meaning locality. Whereas premises means a dwelling and its land. There is no evidence in the record to support a finding that the Plaintiff conducted any business from his dwelling or the land distinctly related to the dwelling.

The Illinois Vehicle Code does not require the place the dealer occupies to be used exclusively for the selling, [etc.]; e.g. Section 1020.10(a)(1) of the Illinois Administrative Code permits a dealer office facilities in a licensed mobile home park and a department store.

Facts established that the Plaintiff's primary and principal operation at his place of business is an auto dealership."

This appeal raises the issues: (1) whether plaintiff's operation of a used car dealership along with two other businesses on the same premises violated plaintiff's obligation to maintain an established place of business for his used car dealership; and (2) whether plaintiff's established place of business included his residence.

■■ ■ Initially, we note that whether an administrative agency has acted within the scope of its power and authority is a judicial function, not one which the agency determines. (*Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816.) Therefore, although the Secretary contends that the circuit court's decision is against the manifest weight of the evidence, the proper standard of review is whether the circuit court correctly interpreted section 5—100 (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100) as a matter of law. Neither party has directed us to a case interpreting the provisions of section 5—100, and our independent research has not discovered any.

Section 5—501(a) of the Code states:

"The license of a person issued under this Chapter may be denied, revoked or suspended if the Secretary of State finds that the applicant, or the officer, director, shareholder having a ten percent or greater ownership interest in the corporation, owner, partner, trustee, manager, employee or member of the applicant or the licensee has:

* * *

5. Not maintained an established place of business as de-

fined in this Code." Ill. Rev. Stat. 1985, ch. 95½, par. 5—501(a).

Section 5—100 of the Code defines an established place of business as follows:

"The place owned or leased and regularly occupied by a dealer for the primary and principal purpose of engaging in selling, buying, bartering, exchanging or dealing in, on consignment or otherwise, vehicles or their essential parts by any person duly licensed as a dealer. Where vehicles are displayed and offered for sale, and where the books and records required for the conduct of the business or such person are maintained and kept, and where there are adequate facilities to enable the dealer to carry out warranties made to buyers of vehicles sold and to place the vehicles in safe operating condition, but such facilities need not be on the premises, if the dealer operating the place of business provides, by written contract, for the use of and uses an established vehicle repair shop for having the warranties carried out and the vehicles placed in safe operating condition. 'Established place of business' shall not include a house trailer, residence, tent, temporary stand, temporary address, office space, room or rooms in a hotel, rooming house, or the premises occupied by a single or multiple unit dwelling house; except that in the case of an additional place of business for a licensed dealer, it shall include an exhibition area in a trade show or exhibition." Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100.

■ An issue which requires the construction of a statute is a question of law. (*In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 765.) In construing statutory provisions, our role is to examine the entire statute for guidance as to the legislative intent, determine the objective the statute sought to accomplish and the evils it desired to remedy, and upon ascertaining the legislature's intent, give it effect. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) Where a statute has not been judicially interpreted, a court is guided by both the plain meaning of the statute's language and the legislative intent. (*Eckman v. Board of Trustees for the Police Pension Fund* (1986), 143 Ill. App. 3d 757, 762.) "When the statutory language is clear and unambiguous, the court's only function is to enforce the law as enacted by the legislature." *Eckman*, 143 Ill. App. 3d at 762.

■ As the Secretary correctly notes, an agency's construction of a statute will be given substantial weight and deference; however, the

agency's interpretation, while persuasive, is not binding on the court. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152; *Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816.) An agency's construction of a statute is not binding on a court where it is clearly erroneous, arbitrary, or unreasonable. *Mitee*, 152 Ill. App. 3d at 816-17.

■■ The Secretary contends that a plain reading of section 5—100 of the Code (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100) makes clear that the operation of other businesses on the same premises as a licensed car dealership is prohibited. We disagree.

An established place of business is the place owned or leased and regularly occupied by a dealer for the primary and principal purpose of engaging in selling, buying, bartering, exchanging, or dealing in vehicles or their essential parts by a licensed dealer. (See Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100.) In our view, the legislature's use of the phrase "primary and principal purpose" indicates that an established place of business may be used for other purposes. Moreover, nowhere in section 5—100 has the legislature stated that a licensee cannot operate other businesses on the same premises which are used to operate a car dealership. To interpret section 5—100 as the Secretary does would require us to read into the statute a provision which is clearly not there. Consequently, we decline to adopt the Secretary's interpretation of section 5—100 because it is clearly erroneous, arbitrary, and unreasonable.

Additionally, section 1020.10 of the Illinois Administrative Code provides further support for our interpretation of section 5—100. Section 1020.10 permits a dealership to be operated within a department store as long as the dealership is separated from all other operations within the department store. (92 Ill. Adm. Code 1020.10(a)(7) (1986).) Therefore, the Secretary's own regulation contemplates the operation of a car dealership with other businesses on the same premises.

■■ Equally supportive of our interpretation of section 5—100 is the Secretary's proposed amendment to section 1020.10. The proposed amendment to section 1020.10 states, *inter alia:*

"(C) The separate lot requirement specified in subsection A of this Section (a)(6) shall not prohibit the operation by the dealer of other businesses on the same premises, which shall include the lot, provided that the businesses are reasonably related to the sale or operation of new or used automobiles, provided further that the sale of new or used automobiles shall constitute at least 50% of the gross revenues of the licensed holder, and the sale of automobiles shall be the primary business of the licensed

dealer. No business defined as reasonable [*sic*] related to the sale of automobiles under this section shall exceed 50% of the gross revenues of the business entities using the lot. Businesses reasonably related to the sale or operation of automobiles shall include only the sale of automobile parts and accessories, the sale of gasoline, diesel fuel, oil and lubricant, the sale of automobile tires, the leasing of automobiles, insuring automobiles and the financing of automobiles sold by the licensed dealers engaged in these businesses. Licensed dealers engaged in operating businesses other than those stated herein shall remove such businesses or modify them to comply with this rule within 60 days of notification by the Secretary of State, or be subject to the revocation or suspension of their dealers license." (12 Ill. Reg. 4794 (proposed February 26, 1988).)

We believe that the proposed amendment's attempt to limit the type of businesses which could be operated in conjunction with a car dealership implicitly demonstrates the Secretary's understanding that section 1020.10 and section 5—100 permit other businesses to operate on the same premises as a car dealership.

■ Furthermore, we reject the Secretary's assertion that its construction of section 5—100 is necessary to enable the Secretary to conduct warrantless searches of a licensee's established place of business for the purpose of determining the accuracy of required records. (See Ill. Rev. Stat. 1985, ch. 95½, par. 5—403(1).) The Secretary asserts that permitting several businesses to operate on the same premises would make it impossible to conduct authorized warrantless searches because the permissible scope of the search would be unascertainable.

We believe that several businesses operating on the same premises would not hamper the Secretary's ability to conduct authorized warrantless searches of car dealerships. As long as each business entity is kept separate and distinct, which plaintiff did in this case, the permissible scope of an authorized warrantless search is readily ascertainable. In this case, plaintiff kept separate desks, records, office equipment, and phone lines for each business. Plaintiff indicated that the east side of the room was used for his car dealership while the west side was used for his rent-a-space business. An archway enclosed by two solid wood doors separated the office area from the barbershop. As these facts demonstrate, plaintiff's demarcation of each business entity clearly enabled the Secretary to discern the limits for an authorized warrantless search of his used car dealership.

The Secretary hypothesizes that if several businesses were al-

lowed to operate on the same premises as a car dealer, a corrupt dealer's concealment of records or car parts in an area of the premises designated as part of an apparently legitimate, unrelated business would be undetectable through an authorized warrantless search. The Secretary apparently concludes that allowing other businesses to operate on the same premises will destroy the effectiveness of an authorized warrantless search. We believe that the Secretary's conclusions are pure conjecture and speculation. The Secretary's theory assumes that a corrupted dealer will find it more attractive to conceal records or car parts on the dealership's premises as opposed to an off-site location. We will not make such an assumption and, therefore, reject the Secretary's hypothesis.

■ Finally, the Secretary contends that section 5—100 prohibits plaintiff from having his residence on the premises of his used car dealership. As stated in section 5—100, an " 'established place of business' shall not include a *** residence." (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 5—100.) A plain reading of this provision makes clear that it was intended to prevent a person from operating a car dealership out of his residence and that the provision was not intended to prohibit a person from residing on the same premises as the dealership. Plaintiff's residence was not accessible from either his used car dealership or from the other businesses operated on the premises. Therefore, we conclude that section 5—100 does not prohibit a person from residing on the same premises from which a car dealership is operated.

Accordingly, for the reasons expressed above, the decision of the circuit court is affirmed.

Affirmed.

REINHARD and NASH, JJ., concur.