LAKE COUNTY CONTRACTORS DEVELOPMENT ASSOCIATION, INC., *et al.*, Plaintiffs-Appellees, v. NORTH SHORE SANITARY DISTRICT OF LAKE COUNTY, ILLINOIS, Defendant-Appellant.—LAKE COUNTY CONTRACTORS DEVELOPMENT ASSOCIATION, INC., *et al.*, Plaintiffs-Appellees, v. THE COUNTY OF LAKE *et al.*, Defendants-Appellants.

Second District   Nos. 2—89—0753, 2—89—0764 cons.

Opinion filed May 30, 1990.

32

Neil F. Hartigan, Attorney General, of Springfield, Murray R. Conzelman, of Conzelman, Schultz, Snarski & Mullen, of Waukegan, and Robert T. Isham, Jr., of McDermott, Will & Emery, of Chicago (Robert J. Ruiz, Solicitor General, and Jerald S. Post and Jan E. Hughes, Assistant Attorneys General, of Chicago, and Karl W. Grabemann, of counsel), for appellant.

Fred L. Foreman, State's Attorney, and Alan M. Kaplan, of Brydges, Riseborough, Morris, Franke & Miller, both of Waukegan, and Thompson & Thompson, of Libertyville (Mimi E. Brin, Assistant State's Attorney, Paul E. Thompson, and Louis W. Brydges, Jr., of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Lake County Contractors Development Association (Association) and Lake County Grading Company of Libertyville (Grading), brought actions in the circuit court of Lake County seeking administrative review of determinations by defendants, the North Shore Sanitary District of Lake County (Sanitary District) and Gwen R.

Martin, Director of the Department of Labor (Department), on behalf of the Lake County Public Building Commission (Commission) and the County Board of Lake County (County), as to prevailing wages for various trades in Lake County. The actions were consolidated in the trial court, and the trial court entered summary judgment in favor of plaintiffs. The Sanitary District and the Department filed these appeals, which have been consolidated.

The record on appeal establishes the following facts. The Commission enacted an ordinance on June 8, 1988, specifying the prevailing rate of wages for various categories of trade workers on public works projects in Lake County. The Commission conducted no independent investigation of prevailing wages, but, rather, adopted the schedule enacted by the Department. The County enacted a similar ordinance without independent investigation on June 13, 1988, as did the Sanitary District on June 23, 1988. Plaintiffs filed objections to the Sanitary District's ordinance on July 13, 1988, contending that the ordinance contained incorrect wage rates for 18 categories of trade workers and contained incorrect overtime rates for laborers, teamsters, plumbers and cement masons. Plaintiffs also contended that the Sanitary District exceeded its authority by specifying when overtime must be paid, as opposed merely to specifying the rate. Plaintiffs filed similar objections to the County's ordinance. Apparently plaintiffs had previously on July 5, 1988, filed objections to the Commission's ordinance objecting only to the overtime rates for laborers, teamsters, plumbers and cement masons and that the Commission had no authority to determine when overtime must be paid. These objections are missing from the record on appeal but are recited in the hearing officer's findings.

On August 2, 1988, the Sanitary District conducted a hearing on the objection to its ordinance. At the hearing, Robert Macgruder, executive vice-president of the Association, testified that the Association represents approximately 170 contractors. He testified that he participated in the negotiations of collective bargaining agreements with bricklayers, carpenters, cement masons, laborers, operating engineers, plasterers, plumbers, and teamsters.

Macgruder testified that the Association annually prepares a listing of wage rates and fringe benefits of 23 different building trade unions. According to Macgruder, the list is cross-checked with union offices and other contractor associations for accuracy.

The Association entered into evidence a table prepared by Macgruder listing wage and fringe benefits for various trades based upon his survey. Macgruder also testified that overtime practices vary

among trades. He testified that, for example, laborers allow work on Saturday at straight time if a weekday is lost to weather and that if a holiday falls during the week, laborers may work 10 hours a day at straight time the other four days of the week. The Association introduced into evidence a portion of a laborers' union collective bargaining agreement for 1988, which included provisions for overtime practices as described by Macgruder. The Association also introduced into evidence overtime provisions in collective bargaining agreements for teamsters and for carpenters which differ in some respects from the practices specified in the ordinance for these trades.

Macgruder testified that the vast majority of public works projects in Lake County are performed by contractors whose employees are working under collective bargaining agreements. Macgruder was unaware of any public works projects in the preceding year which were not performed in large part by union trades. Macgruder further testified that many of the rates specified in the Sanitary District ordinance appeared to be rates from earlier collective bargaining agreements which had expired.

Paul Thompson, an attorney for Grading, testified that he was familiar with the wages paid workers on public works projects in Lake County. He testified that at least 95% of the work on public works is performed by contractors who employ labor under the terms of collective bargaining agreements. According to Thompson, the ordinance appeared to utilize wage rates from collective bargaining agreements from prior years. Thompson testified that the wage rates specified by Macgruder during his testimony were the current rates being paid by union contractors in Lake County.

Several union representatives and a contractor testified that the rates in the ordinance for various trades were incorrect and reflected rates from prior collective bargaining agreements. Robert Barnes, secretary-treasurer of Teamsters' Local 101, testified that the overtime provision of the ordinance for truck drivers did not reflect practices in the Teamsters' current collective bargaining agreement.

David Hayes, manager of the conciliation mediation division of the Department, testified that in determining prevailing wages, collective bargaining agreements were the overwhelming factor considered, although the Department could consider other factors. Hayes testified that the Department would not certify overtime practices allowing work weeks of four 10-hour days, or Saturday makeup days.

The hearing officer found that "there is a disparity between the District's determination of the prevailing rate of wages and those found in several of the collective bargaining agreements that were ef-

fective in Lake County, Illinois on June 1 and thereafter. However, this disparity, in my opinion, is not sufficient by itself to warrant a redetermination by the District of the prevailing rate of wages that was earlier determined by it." The trustees of the Sanitary District adopted the hearing officer's report and recommendation.

On August 18, 1988, the Department held a hearing on behalf of the County and the Commission with respect to the objections to their determinations. At this hearing, plaintiffs moved to amend their objections to the Commission's wage determinations so that they would duplicate the objections raised against the County's determinations. The hearing officer denied this motion based on the statutory requirement that objections be filed within 15 days of publication of the ordinance.

At the hearing, the parties agreed to the introduction into evidence of the transcript and portions of the exhibits from the Sanitary District's hearing. Robert Macgruder also testified at this hearing and presented a schedule of wages which contained a few pension rates different from those listed in the schedule submitted at the Sanitary District's hearing. The parties stipulated that the schedule reflected the rates of wages and benefits for workers in Lake County. The hearing officer found that the County erred with respect to its wage determination for truck drivers and its wage and fringe benefit determination for electricians. In all other respects, the hearing officer overruled the remaining objections.

Upon administrative review before the circuit court of Lake County, the court granted plaintiffs' motion for summary judgment against the Sanitary District, the Commission, and the County. The court found, *inter alia*, that over 90% of the public works performed in Lake County for the Sanitary District, the County, and the Commission were done by union labor, that the evidence established that on June 1, 1988, the prevailing wage rates were established by the objectors' evidence of union contracts then in existence, and that the Department had no authority to set the times and instances when overtime payments shall be made.

The issues raised on appeal by the Department and the Sanitary District are as follows: (1) whether the circuit court erred in considering the untimely, oral objections to the Commission's ordinance; (2) whether the circuit court erred in finding the Department's prevailing wage determinations were against the manifest weight of the evidence; and (3) whether the circuit court erred in finding that the Sanitary District, the Commission, and the County do not have the authority under the Prevailing Wage Act to determine when overtime rates

shall apply.

■■ The pertinent statutory provisions are as follows. Section 3 of "An Act regulating wages of laborers, mechanics and other workers employed in any public works ***" (Prevailing Wage Act or Act) provides, in pertinent part:

"§3. Not less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed, and not less than the general prevailing rate of hourly wages for legal holiday and overtime work, shall be paid to all laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction of public works." Ill. Rev. Stat. 1987, ch.48, par. 39s—3.

Section 4 of the Act mandates:

"§4. The public body awarding any contract for public work or otherwise undertaking any public works, shall ascertain the general prevailing rate of hourly wages in the locality in which the work is to be performed, for each craft or type of worker or mechanic needed to execute the contract, and where the public body performs the work without letting a contract therefor, shall ascertain the prevailing rate of wages on a per hour basis in the locality, and such public body shall specify in the resolution or ordinance and in the call for bids for the contract, that the general prevailing rate of wages in the locality for each craft or type of worker or mechanic needed to execute the contract or perform such work, also the general prevailing rate for legal holiday and overtime work, as ascertained by the public body or by the Department of Labor shall be paid for each craft or type of worker needed to execute the contract or to perform such work, and it shall be mandatory upon the contractor to whom the contract is awarded and upon any subcontractor under him, and where the public body performs the work, upon the public body, to pay not less than the specified rates to all laborers, workers and mechanics employed by them in the execution of the contract or such work[.]" (Ill. Rev. Stat. 1987, ch. 48, par. 39s—4.)

Section 9 of the Act requires public bodies to investigate and ascertain the prevailing rate of wages during the month of June of each calendar year and additionally requires the Department to investigate and ascertain the prevailing rate of wages for each county in the State during June. Ill. Rev. Stat. 1987, ch. 48, par. 39s—9.

■■ Following ascertainment of the generally prevailing wage

rates for a locality, a public body must publish its determination, whereupon any person affected by the determination may within 15 days object in writing to the determination. (Ill. Rev. Stat. 1987, ch. 48, par. 39s—9.) Thereafter, it is the duty of the public body to conduct a hearing on the objection. If the public body fails to do so, the Department may, upon request of the objectors, conduct the hearing on behalf of the public body. Ill. Rev. Stat. 1987, ch. 48, par. 39s—9.

With respect to the hearing, section 9 of the Act provides:

"At such hearing the public body or Department of Labor shall introduce in evidence the investigation it instituted which formed the basis of its determination, and the public body or Department of Labor, or any interested objectors may thereafter introduce such evidence as is material to the issue. Thereafter, the public body or Department of Labor, must rule upon the written objection and make such final determination as it believes the evidence warrants, and promptly file a certified copy of its final determination with such public body and the Secretary of State, and serve a copy by personal service or registered mail on all parties to the proceedings. The final determination by a public body shall be rendered within 10 days after the conclusion of the hearing.

If proceedings to review judicially the final determination of the public body or Department of Labor are not instituted as hereafter provided, such determination shall be final and binding.

The provisions of the Administrative Review Law, and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of any public body or the Department of Labor hereunder. The term 'administrative decision' is defined as in Section 3—101 of the Code of Civil Procedure." Ill. Rev. Stat. 1987, ch. 48, par. 39s—9.

■ Initially, the Department contends that the trial court erred in modifying the wage rates in the Commission's order for 18 trades which plaintiffs had not included in their original objection to the ordinance. The Association has not responded to this contention, and Grading has made a brief argument not supported by the record. We agree with the Department's argument. The Prevailing Wage Act only requires the Department or a public body to conduct a hearing on written objections filed "within 15 days after a certified copy of the determination has been published." (Ill. Rev. Stat. 1987, ch. 48, par.

39s—9.) The Department's hearing officer, presiding over the hearing conducted on behalf of the Commission, properly declined to consider new, untimely oral objections to the ordinance. Accordingly, the judgment of the trial court is reversed with respect to these objections to the Commission's determination as to the prevailing wage rate for these 18 trades.

■ The Department and the Sanitary District further argue that the trial court erred in finding their determinations of the prevailing wage rates in the objections before the Sanitary District and the County to be against the manifest weight of the evidence. It is well established that the findings of an administrative agency on questions of fact are *prima facie* true and correct, and a reviewing court may set aside such findings only if they are against the manifest weight of the evidence. *Evert v. Board of Trustees of the Fire Fighters' Pension Fund* (1989), 180 Ill. App. 3d 656, 660, 536 N.E.2d 143.

■ We believe the determinations of the Department and the Sanitary District were properly set aside by the circuit court in the instant case. The Sanitary District, County, and Commission all adopted the Department's determination as to prevailing wage rates. No evidence was presented as to any independent investigation by the Sanitary District, County or Commission; nor was any evidence submitted of the Department's investigation. Accordingly, the record is devoid of any support for the wage rates determined by the Department.

In contrast, the Association presented the testimony of its executive vice-president, who related the results of his survey of prevailing wages in June 1988 in Lake County for various trades. He testified that the Association represents approximately 170 contractors and that he had participated in the negotiation for collective bargaining agreements for a number of trades. He further testified that in conducting his survey he contacted unions and other trade associations. Moreover, union representatives and a contractor testified that the Association's figures reflected prevailing wage rates, whereas the Department's figures reflected rates under expired collective bargaining agreements.

■ The fact that the Association's figures were based on union scale does not render them invalid as it has been recognized that in such times or situations as union labor predominates in the public works field, the prevailing union scale will no doubt set the standard for the prevailing wage rate under the statute. (*Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 423, 463 N.E.2d 124.) Here, the evidence clearly shows that over 90% of the public works projects in Lake

County are performed by contractors employing union labor. Under these circumstances, there is no basis to reject the rates introduced by the Association.

The Department repeatedly asserts that the trial court did not properly consider the record or employ the correct standard of review as to the Commission's and the County's determinations. The Department contends that the trial court was under the mistaken belief that the evidence before the Department was identical to the evidence before the Sanitary District. The Department points out that at the Sanitary District hearing complete copies of collective bargaining agreements were placed into evidence, whereas the evidence at the Department hearing was primarily testimonial and not all the exhibits in the Sanitary District hearing were in evidence in the Department hearings. We find no indication that the trial court failed to distinguish properly between the records in the two proceedings. Moreover, while the evidence presented at the Department hearing may have been less extensive than at the Sanitary District hearing, it was still sufficient to support plaintiffs' objections, despite some inconsistency in the evidence. Indeed, the Department stipulated to the accuracy of the schedule of wages and benefits presented by Macgruder during the hearing. The Department also contends that the trial court improperly made a *de novo* determination. We find no indication that the trial court applied an incorrect standard of review.

■ The Department additionally argues that it is entitled to deference with respect to its determination from its original investigation of prevailing wages. The Department asserts that, by rejecting the Department's original determination, the trial court would impose an undue burden on the Department with respect to the extent of the investigation it must conduct. The adequacy of the Department's procedures is not at issue, but, rather, the issue is the correctness of its determination. The Department cites no authority and advances no reason why the Department or a public body at a hearing on objections should defer to its original determination in the face of evidence of its inaccuracy. Moreover, the Department is in a poor position to defend the adequacy of its investigation, having presented little specific evidence in this regard at the hearing below.

The Department and the Sanitary District also contend that the trial court erred in holding that they were without authority to determine when overtime must be paid. Plaintiffs contend that the trial court ruled correctly and that the Prevailing Wage Act only allows public bodies to determine the amount of pay employees must receive when working overtime but does not give the public bodies the power

to determine the prevailing overtime practice, which is the hour of the day or the day of the week on which employers are to pay the overtime rate of pay. Alternatively, plaintiffs contend that the trial judge correctly ruled when he found that even if such authority exists, the Department and the Sanitary District erred in their determinations.

The Department and the Sanitary District maintain that implicit in the statutory mandate that they determine the generally prevailing rate for overtime work is the authority to determine when overtime must be paid. They contend that such a construction is necessary to fulfill the purposes of the Act. We agree with this position.

■■■ In interpreting a statute, the function of the court is to ascertain and give effect to the intent of the legislature. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479, 498 N.E.2d 1102.) In determining legislative intent, consideration must be given to the entire statute, its nature, object, and purpose to be attained, and the evil to be remedied. (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 157, 499 N.E.2d 1309.) On appeal from an administrative agency's action, the agency's construction of a statute or rule, as here, is to be considered persuasive, but is not binding on the court, and the court will not be bound by an interpretation that is clearly erroneous, arbitrary, or unreasonable. (*Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816-17, 504 N.E.2d 1298.) Courts of review are not bound to give the same measure of deference to an administrative agency's construction of a statute as is given to its findings of fact. *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072.

■■■ Among the purposes of the Act is to "protect local workers by removing the incentive to import less expensive labor from areas outside the locality in which the work is being performed." (*People ex rel. Bernardi v. City of Highland Park* (1988), 121 Ill. 2d 1, 10, 520 N.E.2d 316.) We can envision circumstances in which, if a public body is not given authority to specify prevailing overtime practices, but rather is limited to specifying the rate only, this purpose would be undermined. If, for example, the prevailing overtime practice in a trade in a given locality pays workers time and a half for each hour worked after eight hours in a workday and time and a half for each hour worked after 40 in a work week, but in another locality tradesmen receive time and a half after 40 hours in a work week, but are paid at straight time for up to 10 hours a day, contractors employing the latter group of tradesmen would have a competitive advantage if a pub-

lic body could only specify that overtime was to be paid at "time and a half." Accordingly, we believe the Act authorizes the department or a public body to determine the prevailing overtime practices.

■■ Nonetheless, we agree with plaintiffs' alternative contention that the determinations by the Sanitary District and the Department in the instant case were erroneous. It is clear from the record that overtime practices vary among trades. The overtime provisions of the ordinances in this case do not reflect the prevailing practices in certain trades as shown by plaintiffs' evidence. The Department contends that overtime practices which allow Saturday makeup days or four 10-hour days cannot be adopted as the prevailing wage because, pursuant to the Prevailing Wage Act, each year's determination sets a "floor" for wages in subsequent years, and previous determinations had required overtime pay for the 9th and 10th hours of the day and for weekends and holidays. The Department cites *Bradley v. Casey* (1953), 415 Ill. 576, 114 N.E.2d 681, for the proposition that each year's prevailing wage determination sets a floor for succeeding years. Suffice it to say that *Bradley* stands for no such proposition. The trial court properly determined that the correct prevailing practices as of June 1, 1988, were those contained in the collective bargaining agreement as to each particular trade.

Accordingly, the portion of the judgment of the circuit court modifying 18 wage determinations in the Commission's ordinance is reversed. Otherwise the judgment of the circuit court is affirmed for the reasons stated in this opinion.

No. 2—89—0753, Affirmed.
No. 2—89—0764, Affirmed in part; reversed in part.

UNVERZAGT, P.J., and WOODWARD, J., concur.